UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 02482

-------------------------------------------------------x

ECF Case

EEI HOLDING CORPORATION,

Index No.

    Plaintiff,

COMPLAINT

    -against-

RECEIVED
MAR 1 1 2008
U.S.D.C. S.D. N.Y.
CASHIERS

PLATINUM FUNDING SERVICES LLC,

    Defendant.

-------------------------------------------------------x

Plaintiff EEI Holding Corporation ("EEI"), by and through its attorneys, Tashjian &

Padian, as and for its Complaint against Defendant Platinum Funding Services LLC

("Platinum"), hereby alleges as follows:

## NATURE OF ACTION

1.    This action concerns Platinum's breach of a factoring agreement between the

parties dated August 23, 2006 and amended as of July 1, 2007 (the "Factoring Agreement") and

Platinum's withholding of, and refusal to pay to EEI, monies contained in its reserve account

totaling at least $406,955.31, which rightfully belong, and are due and owing to, EEI.

## PARTIES

2.    Plaintiff EEI is a corporation organized under the laws of the State of Illinois,

with its principal place of business located at 700 North MacArthur Blvd., Springfield, Illinois

62702.  EEI is in the business of electrical contracting and its nation-wide projects include

commercial, industrial, institutional, residential, traffic and communications projects.  Mr.

Robert W. Egizii is the sole voting shareholder, sole Director and President of EEI.

3.      Defendant Platinum is a limited liability company organized under the laws of the State of New York, with its principal place of business located at 130 W. 42nd St., 28th Floor, New York, New York 10036.

4.      Upon information and belief, no member of Platinum is a citizen of the State of Illinois.

## JURISDICTION

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as this is an action between citizens of different states and the matter in controversy, excluding interest and costs, exceeds $75,000.

6.      Upon information and belief, Platinum is subject to personal jurisdiction in the State of New York pursuant to N.Y. C.P.L.R. § 301 on the grounds that it has done and is doing business in the State of New York.  Personal jurisdiction also vests under the New York long-arm statute, N.Y. C.P.L.R. § 302.

7.      Platinum is also subject to personal jurisdiction in the State of New York pursuant to the Factoring Agreement pursuant to which Platinum irrevocably consented to the exercise of jurisdiction over it in this Court in connection with any legal action relating to or arising from the Factoring Agreement or the factoring relationship between Platinum and EEI.

8.      Venue properly rests in this District pursuant to 28 U.S.C. §§ 1391(a) and (c).  In addition, under the Factoring Agreement, Platinum has waived any and all objections to this venue.

## FACTUAL BACKGROUND

9.      On or about August 23, 2006, Platinum and EEI entered into the Factoring Agreement, whereby the parties agreed that EEI would sell and Platinum would purchase from

EEI all of EEI's right, title and interest in certain accounts receivable (the "Accounts Receivable") due to EEI from its customers. A copy of the Factoring Agreement is attached hereto as Exhibit A.

10.     The Factoring Agreement was secured by, *inter alia*: (i) a pledge agreement of Robert W. Egizii's 20.719% interest in Downtown Property, LLC, the fee-holder of the National City Building in Springfield, Illinois and 79% of the Egizii Family Limited Partnership's 47.5% interest in Downtown Property, LLC; (ii) a mortgage on 79% of the Timber Ridge Farm consisting of 454 acres in Sangamon County, Illinois; (iii) a mortgage on certain real property located at 5th Street and Jefferson Street in Springfield, Illinois; (iv) the assignment of several life insurance policies held by Robert W. Egizii; (v) a performance guaranty from Robert W. Egizii and (vi) a Security Agreement granting Platinum a collateral interest in all of EEI's "Accounts, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, General Intangibles, Documents and proceeds and products of the foregoing" (collectively, the "Collateral").

11.     Pursuant to the Factoring Agreement, the Accounts Receivable Platinum elected to purchase from EEI were to be purchased upon the terms and subject to the conditions of separate purchase and sale agreements between Platinum and EEI (the "Purchase and Sale Agreements"), copies of which are attached hereto as Exhibit B.

12.     Pursuant to the Factoring Agreement, with respect to each batch of Accounts Receivable purchased by Platinum from EEI over a certain period of time, Platinum was to advance to EEI seventy percent (70%) of the face amount of the Accounts Receivable (the "Advance Amount") and, under the terms of the Purchase and Sale Agreements, upon collection of the Accounts Receivable from the account debtors, pay to EEI the net balance (the "Net

Balance"), which equaled the aggregate amount of the Accounts Receivable less (a) the Advance

Amount and (b) Platinum's commission (the "Fee"). Platinum's Fee schedule is attached and

made part of the Purchase and Sale Agreements (the "Fee and Reimbursement Schedule").

13.    The Fee and Reimbursement Schedule sets forth Platinum's agreed upon Fee with

respect to the Accounts Receivable purchased from EEI pursuant to the Factoring Agreement.

According to the Fee and Reimbursement Schedule, Platinum's Fee was calculated as a

percentage of the amount of the Account Receivable, with the percentage increasing the longer

the Account Receivable took to collect. For example, if an invoice was paid within 30 days,

Platinum's Fee on that invoice would be 2.0%. If, however, the invoice was paid between 30

and 40 days, Platinum's Fee would be 2.67%.

14.    As stated in the Factoring Agreement, the Fee earned by Platinum and set forth in

the Fee and Reimbursement Schedule was based on the delivery by EEI of not less than

$3,000,000 per month of approved Accounts Receivable during each 30 day period that the

Factoring Agreement was in effect (the "Monthly Base Sales Amount").

15.    The Factoring Agreement provided in Section 9(a) that in the event the Monthly

Base Sales Amount was not met for any given month, Platinum would be entitled to a minimum

fee (the "Minimum Fee"). If the Accounts Receivable delivered by the Plaintiffs for a specific

month was less than the Monthly Base Sales Amount, the Minimum Fee was calculated as the

product of (i) the actual aggregate fees earned by Platinum from the purchase of Accounts

Receivables from the Plaintiffs for the applicable month (the "Partial Fee") and (ii) the Monthly

Base Sales Amount divided by the actual aggregate amount of Accounts Receivable delivered,

(iii) less the Partial Fee.

16.    If the Plaintiffs did not deliver any Accounts Receivable for a specific month, Section 9(b) of the Factoring Agreement provided that the Minimum Fee was calculated as the product of (i) the Monthly Base Sales Amount and (ii) the aggregate fees previously earned by Platinum from the purchase of Accounts Receivables divided by the actual aggregate amount of Accounts Receivable previously purchased by Platinum.

17.    Pursuant to Section 9(c) of the Factoring Agreement, in the event that EEI did not deliver any Accounts Receivable to Platinum for purchase for a period of forty-five (45) days, Platinum, upon three (3) days notice, could elect to terminate the Factoring Agreement (a "No Delivery Termination").  Upon the event of a No Delivery Termination, EEI would pay to Platinum the greater of either (i) the Minimum Fees for each month of the unexpired term or (ii) 2.0% of the total amount of approved Accounts Receivable committed by EEI to be delivered to Platinum under the Factoring Agreement (the "No Delivery Fee").

18.    Pursuant to the Factoring Agreement, upon Platinum's purchase of an account receivable, the account debtors were notified to make payments directly to Platinum, and Platinum was authorized to undertake collection.  Platinum deposited any Accounts Receivable collected into a reserve account (the "Reserve Account"), from which it disbursed the Advance Amount to EEI, deducted its Fee and reimbursed the balance to EEI.

19.    The Factoring Agreement originally provided for a term of two years, from August 23, 2006 through August 22, 2008 and allowed for termination by EEI on the first anniversary of August 23, 2006 (*i.e.*, August 23, 2007) upon tendering to Platinum a cash payment of $1,000,000 (the "Termination Fee").  If EEI terminated the Factoring Agreement after the first anniversary, it provided that the Termination Fee would be reduced by 1/12th for each month following the first anniversary.

The Amendment of the Factoring Agreement

20.    On or about July 20, 2007, the parties executed a letter amendment amending the terms of the Factoring Agreement effective as of July 1, 2007 (the "Amendment"). A copy of the Amendment is attached hereto as Exhibit C.

21.    The Amendment was necessary because of a change in EEI's business in the latter part of 2006 and during 2007 that greatly reduced the accounts receivable available for sale to Platinum. A subsidiary of EEI, Olson Electric Co., Inc. had closed, and EEI was only doing electrical bid jobs and joint ventures. The majority of EEI's remaining accounts were either billed on a time and materials basis or on a fifteen-day pay schedule, thereby rendering factoring impractical.

22.    Prior to the Amendment, Platinum had been charging EEI a Minimum Fee of approximately $120,000-$150,000 a month, which became an economic impracticability following the changes in EEI's business. Platinum therefore agreed to restructure the Factoring Agreement.

23.    Pursuant to the Amendment, the term of the Factoring Agreement was extended to four years, from August 23, 2006 through August 22, 2010, and allowed for termination by EEI on the third anniversary of August 23, 2006 (*i.e.*, August 23, 2009). If EEI terminated the Factoring Agreement after the third anniversary (*i.e.*, August 23, 2009), it provided that the Termination Fee would be reduced by 1/12th for each month following the first anniversary (*i.e.*, August 23, 2007).

24.    Accordingly, pursuant to the Amendment, EEI would owe no Termination Fee if it exercised its right to terminate the Factoring Agreement as of August 23, 2009.

25.     Pursuant to the Amendment, the Factoring Agreement was amended to provide that in the event that EEI did not deliver any Accounts Receivable for a particular month, the Minimum Fee would be 2% of the $3,000,000 Monthly Base Sales Amount, *i.e.*, $60,000. Given the reduction in EEI's business, it would never have agreed to extend the term of the Factoring Agreement if Platinum had not also agreed to accept $60,000 each month as the Minimum Fee.

26.     In consideration of the change in EEI's business, Platinum agreed to the Amendment with the understanding that it would continue to receive Accounts Receivable directly from the account debtors, without the need for delivery of any Accounts Receivable by the Plaintiffs, and would deduct the $60,000 Minimum Fee from the Reserve Account each month.

27.     Pursuant to the Factoring Agreement Platinum has earned approximately $3 million dollars in profit, far exceeding the expectations of the parties.

The Parties' Course of Dealing
Following the Amendment

28.     Following the Amendment, the course of dealing between the parties has been for EEI to deliver Accounts Receivable directly from the account debtors to Platinum, and for Platinum to deduct the $60,000 Minimum Fee from the Reserve Account and reimburse the remainder to EEI.

29.     The Accounts Receivable that Platinum collected were from EEI's customers for whom EEI performed new work. As anticipated by the parties, the amount of Accounts Receivable generated by this additional work was sufficient to meet the $60,000 Minimum Fee each month pursuant to the Amendment.

30.     Platinum adhered to this agreement each month without objection until January 28, 2008, whereupon it delivered a letter of the same date signed by Platinum's Chief Operating

Officer James R. Bertie in which Platinum purported to give notice of its election to terminate

the Factoring Agreement based upon EEI's purported failure to deliver any Accounts Receivable

to Platinum for a period of forty-five (45) days (the "Purported Termination Notice"). In the

January 28, 2008 letter, Platinum also claimed entitlement to a No Delivery Fee.

31.     Prior to the time when Platinum issued the Purported Termination Notice, the

parties had been discussing a potential buy-out of the Factoring Agreement, given the changed

circumstances of EEI's business. In fact, Platinum issued the Purported Termination Notice only

after EEI notified Platinum of its intention to exercise its right to terminate the Factoring

Agreement upon its third anniversary on August 23, 2009 and after realizing that, pursuant to the

Amendment, the termination payment owed to Platinum upon termination on August 23, 2009

would be zero.

32.     Upon receipt and review of the Purported Termination Notice, EEI served written

objections to the Purported Termination Notice by letter dated January 31, 2008. A copy of the

Purported Termination Notice, the Plaintiffs' January 31, 2008 response and subsequent

correspondence between the parties are attached hereto as Exhibit D.

33.     Thereafter, despite EEI's written objections to the Purported Termination Notice,

Platinum imposed a purported No Delivery Fee in the amount of $1,920,000, purported "Legal

Charges" totaling $1,125 and various, unnecessary fees totaling $60,275 upon the Reserve

Account.

34.     If not for the purported No Delivery Fee, "Legal Charges" and other unnecessary

fees totaling $1,981,400 imposed by Platinum upon the Reserve Account, the balance in the

Reserve Account from the Accounts Receivable that Platinum received directly from the account

debtors would be $406,955.31 as of March 11, 2008.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

35.     EEI repeats and realleges each of the allegations contained in paragraphs 1 through 34 of this Complaint with the same force and effect as if fully set forth herein.

36.     Platinum breached the Factoring Agreement by (i) issuing the No Delivery Termination; (ii) imposing the No Delivery Fee upon EEI; and (iii) failing to reimburse EEI the $406,955.31 remaining in the Reserve Account.

37.     In addition, Platinum breached the Factoring Agreement by repeatedly taking more than the amount allowed pursuant to Section 9(a) of the Factoring Agreement for its Minimum Fee.  Despite EEI's request for remuneration, Platinum has refused to refund the Minimum Fee amounts that were incorrectly assessed under Section 9(a) of the Factoring Agreement.

38.     EEI has been damaged by said breaches in an amount to be determined at trial, but not less than $406,955.31.

## SECOND CAUSE OF ACTION
### (CONVERSION)

39.     EEI repeats and realleges each of the allegations contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth herein.

40.     By failing to remit the $406,955.31 of remaining funds in the Reserve Account, Platinum improperly exercised dominion and control over monies rightfully belonging to EEI, in a manner inconsistent with and interfering with EEI's right to possession.

41.     Notwithstanding EEI's duly made demand of the remaining funds in the Reserve Account, Platinum has refused and continues to refuse to remit payment to EEI.

42.     By reason of the foregoing, EEI has been damaged in an amount to be determined with specificity at trial, but not less than $406,955.31.

### THIRD CAUSE OF ACTION
### (MONEY HAD AND RECEIVED)

43.     EEI repeats and realleges each of the allegations contained in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.     By failing to remit the $406,955.31 of remaining funds in the Reserve Account, Platinum improperly exercised dominion and control over monies rightfully belonging to EEI, in a manner inconsistent with and interfering with EEI's right to possession.

45.     Notwithstanding EEI's duly made demand of the remaining funds in the Reserve Account, Platinum has refused and continues to refuse to remit payment to EEI.

46.     By reason of the foregoing, Platinum owes EEI $406,955.31 for money had and received from EEI's customers to be paid by Platinum to EEI.

### FOURTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

47.     EEI repeats and realleges each of the allegations contained in paragraphs 1 through 46 of this Complaint with the same force and effect as if fully set forth herein.

48.     By failing to remit the $406,955.31 of remaining funds in the Reserve Account, Platinum improperly exercised dominion and control over monies rightfully belonging to EEI, in a manner inconsistent with and interfering with EEI's right to possession.

49.     Notwithstanding EEI's duly made demand of the remaining funds in the Reserve Account, Platinum has refused and continues to refuse to remit payment to EEI.

50.    By failing to forward the remaining funds in the Reserve Account to the Plaintiffs, Platinum has been unjustly enriched at the expense of EEI in the amount of $406,955.31 which sum EEI has demanded of Platinum and which sum Platinum refused and still refuses to pay.

## FIFTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

51.    EEI repeats and realleges each of the allegations contained in paragraphs 1 through 50 of this Complaint with the same force and effect as if fully set forth herein.

52.    There now exists an actual, justiciable controversy in which EEI is entitled to have a declaration of its rights and further relief, including a mandatory injunction, due to the facts, conditions and circumstances as set forth in this complaint.

53.    An actual controversy has arisen and now exists between EEI and Platinum regarding their respective rights and duties under the Factoring Agreement. Pursuant to the Factoring Agreement, Platinum agreed to receive Accounts Receivable directly from the account debtors and, pursuant to the Amendment to the Factoring Agreement, Platinum agreed to deduct the $60,000 Minimum Fee from the Reserve Account each month as its Fee. As these conditions have been met, EEI has not breached any of its obligations under the Factoring Agreement. Accordingly, the purported No Delivery Termination was, in fact, a breach of the Factoring Agreement by Platinum, the accompanying No Delivery Fee claimed by Platinum is not due and owing, and Platinum no longer has a right to collect Accounts Receivable directly from EEI's customers.

54.    An actual controversy has arisen and now exists between EEI and Platinum regarding their respective rights and duties under the Factoring Agreement in that based upon Platinum's breach of the Factoring Agreement, Platinum should immediately release the

Collateral that it has held and continues to hold, including but not limited to the Accounts Receivable.

55.    An actual controversy also has arisen and now exists between EEI and Platinum regarding their respective rights and duties under the Factoring Agreement in that, even assuming *arguendo* that Platinum was entitled to issue the No Delivery Termination, EEI contends that the No Delivery Fee is an unenforceable penalty and not liquidated damages.

56.    An actual controversy also has arisen and now exists between EEI and Platinum regarding their respective rights and duties under the Factoring Agreement in that EEI contends that the words:

> Sellers may terminate this Agreement at the third year anniversary of the date hereof upon tendering to Platinum a cash payment of $1,000,000 in immediately available funds, which termination payment shall be reduced by 1/12th for each month after the first year anniversary thereof...

in the Factoring Agreement mean that if EEI exercised its right to terminate the Factoring Agreement as of August 23, 2009, the Termination Fee of $1,000,000 would be reduced to zero as of August 23, 2008.

57.    EEI desires a judicial determination of their rights and duties, and a declaration as to (i) whether Platinum breached the Factoring Agreement by issuing the No Delivery Termination in light of the Amendment and the course of dealing between the parties and whether Platinum continues to have any right to collect Accounts Receivable directly from EEI's customers; (ii) whether the Collateral held by Platinum should be immediately released and of no further effect; (iii) whether the No Delivery Fee is an unenforceable penalty and not liquidated damages; and (iv) what payment, if any, would be due to Platinum from EEI if EEI exercised its right of termination on or after August 23, 2009.

58.     A judicial declaration is necessary and appropriate at this time under all the circumstances so that EEI may determine its rights and duties under the Factoring Agreement.

59.     As long as uncertainty concerning the rights and duties of the parties under the Factoring Agreement exists, the account debtors will continue to pay the Accounts Receivable directly to Platinum and Platinum will continue to debit the purported No Delivery Fee and other charges from the Reserve Account, all to the detriment of EEI.

60.     As long as Platinum continues to claim a right to the Collateral, which vastly exceeds Platinum's purported No Delivery Fee in value, EEI's ability to obtain bonding for further construction projects or financing to run and sustain its business is impaired, causing it substantial harm.

61.     Despite due efforts, the parties have been unable to resolve these disputes amongst themselves, and no other administrative remedies exist.

### SIXTH CAUSE OF ACTION
### (INJUNCTION)

62.     EEI repeats and realleges each of the allegations contained in paragraphs 1 through 61 of this Complaint with the same force and effect as if fully set forth herein.

63.     On or about January 31, 2008 and continuing to the present, Platinum has wrongfully and unlawfully withheld $406,955.31 of the funds remaining in the Reserve Account.

64.     On or about January 31, 2008 and continuing to the present, Platinum has wrongfully and unlawfully continued to collect Accounts Receivable directly from EEI's customers.

65.     On or about January 31, 2008, and at other times between that date and the present, EEI has demanded that Platinum refrain from committing the above acts, but Platinum

has refused and has threatened to continue such acts, and will do so, unless this court immediately enjoins Platinum from doing so.

66.     As a result of Platinum's acts, EEI has sustained great and irreparable injury, in that the monies derived from EEI's Accounts Receivable is necessary to the continued operation of EEI's business.  In particular, Platinum's actions as set forth above have impaired EEI's ability to obtain bonding for future projects, resulting in a loss of business to EEI.

67.     EEI cannot be fully compensated in damages, and is without an adequate remedy at law because the exact amount of damage plaintiff will sustain will be difficult to determine, and will result in a clear violation of EEI's legal rights granted by law.

68.     As a further result of Platinum's acts, EEI has sustained money damages in the amount of $406,955.31.  If this court allows these acts to continue, EEI will be further damaged in an amount to determined at trial.

WHEREFORE, plaintiff demands judgment against the defendant as follows:

i)      On the First Cause of Action for damages in an amount to be determined at trial but in no event less than $406,955.31, together with pre-judgment interest, costs, expenses, and attorney's fees;

ii)     On the Second Cause of Action for damages in an amount to be determined at trial but in no event less than $406,955.31, together with pre-judgment interest, costs and expenses;

iii)    On the Third Cause of Action for damages in an amount to be determined at trial but in no event less than $406,955.31, together with pre-judgment interest, costs and expenses;

iv)     On the Fourth Cause of Action for damages in an amount to be determined at trial but in no event less than $406,955.31, together with pre-judgment interest, costs and expenses;

v)    On the Fifth Cause of Action, for a decree determining the respective rights of the

parties hereto under the Factoring Agreement and Amendment;

vi)    On the Sixth Cause of Action, for an injunction restraining Platinum from (a)

withholding or continuing to withhold any of the funds remaining in the Reserve Account and

(b) continuing to collect or attempt to collect any Accounts Receivable directly from EEI's

customers;

iv)    and for such other and further relief as is just and proper.

Dated:  New York, New York
        March 11, 2008

                          TASHJIAN & PADIAN

                    By:  _____
                          Gerald Padian (GP 1581)
                          15 West 36th Street
                          New York, New York 10018
                          (212) 319-9800
                          Attorneys for Plaintiff

Exhibit A

# FACTORING AGREEMENT

THIS FACTORING AGREEMENT made as of the 23rd day of August, 2006 by and between PLATINUM FUNDING SERVICES LLC, a New York limited liability company, having an office at Two University Plaza, Hackensack, New Jersey 07601 ("Platinum") and EEI HOLDING CORPORATION, an Illinois corporation, d/b/a EGIZII ELECTRIC, INC., having a place of business at 700 North MacArthur Blvd., Springfield, Illinois 62702, d/b/a BRH BUILDERS & CONSTRUCTORS, having a place of business at 702 North MacArthur Blvd., Springfield, Illinois 62702, d/b/a SULLIVAN ELECTRIC, INC., having a place of business at 2102 East Main, Marion, Illinois 62959, OLSON ELECTRIC CO., INC., a Florida corporation, having a place of business at 4200 Church Street, Suite 1042, Sanford, Florida 32771 (each, a "Seller", and collectively, the "Sellers"), Robert Egizii ("Robert Egizii", solely for the purposes of Section 3(f)), and the Egizii Family Limited Partnership (the "LP", solely for the purposes of Section 3(g))..

## W I T N E S S E T H:

WHEREAS, Sellers have requested that Platinum purchase from Seller, from time to time, all of Sellers' right, title and interest in and to certain accounts receivable due to Seller' from their customers; and

WHEREAS, Platinum has agreed to purchase certain of such accounts receivable from Sellers, from time to time, upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in order to induce Platinum to purchase such accounts receivable, and for Ten ($10.00) Dollars and other good and valuable consideration, the receipt and sufficiency of which is being hereby acknowledged, the parties hereto agree as follows:

1. <u>Sale and Purchase of Accounts Receivable.</u>  Sellers will tender to Platinum certain of Sellers' invoices to be rendered to Sellers' customers ("Account Debtors") with respect to goods sold and delivered to, or services performed for, such Account Debtors by Sellers (individually, an "Account Receivable" and collectively, the "Accounts Receivable"). Such invoices shall be delivered by Platinum to the respective Account Debtors, in accordance with the standard billing procedures of Platinum, together with or after notice from Sellers and/or Platinum to such Account Debtors of the irrevocable assignment to Platinum of payment thereunder. Platinum will conduct such examination and verification of the invoices so tendered, and such credit investigation of such Account Debtors, as Platinum considers necessary or desirable, and will notify Sellers as to which of the individual Accounts Receivable so tendered, if any, Platinum elects to purchase. Platinum shall at all times have the absolute right in its sole discretion to reject any or all of the Accounts Receivable, whether or not Platinum has previously purchased Accounts Receivables from Sellers or previously purchased Accounts Receivables of any particular Account Debtor.

2. <u>Account Agreements.</u>  Those Accounts Receivables which Platinum elects to purchase from Seller shall be purchased upon the terms and subject to the conditions of separate Purchase and Sale Agreements, between each Seller and Platinum, the form of which has heretofore been provided to Sellers (the "Account Agreements"). Platinum shall advance against the Purchase Price (as defined in the Account Agreements) for the Accounts Receivable Platinum elects to purchase pursuant to the provisions hereof, seventy (70%) percent of the face amount of such Accounts Receivable purchased. Platinum shall pay the balance of the Purchase Price, as calculated pursuant to the applicable Account Agreement, pursuant to the further provisions of this Section 2. For the purposes hereof, the term "Schedule Closure Date" shall mean, with respect to each of the

schedules or batches of Accounts Receivable purchased pursuant to each Account Agreement (a "Schedule"), the date with respect to each Schedule on which the applicable Account Debtors have either paid all such Accounts Receivable in the Schedule or, a Chargeback (as defined in the Account Agreements) has been taken thereagainst; provided, however, that Sellers may, at their election, repurchase any such Accounts Receivable from Platinum, for a price equal to the face amount of such Account Receivable, in which event such Account Receivable shall be deemed duly paid for the purposes of determining the Schedule Closure Date. Notwithstanding anything to the contrary herein contained, the Accounts Receivable purchased by Platinum may be aggregated and administered as a single Account Receivable, or as several discreet Accounts Receivable, in the discretion of Platinum (each, an "Aggregate Receivable" or Schedule as previously defined). Periodically, from and after each Schedule Closure Date, the balance of the Purchase Price, if any, payable in respect of the Accounts Receivable purchased pursuant to each Account Agreement (the "Purchase Price Balance") shall be aggregated with the Purchase Price Balance, if any, from all other Schedules in respect of which there has occurred other Schedule closures (the "Aggregate Purchase Price Balance"), and Platinum shall credit to Sellers' reserve account, the positive amount, if any, of such Aggregate Purchase Price Balance. Chargebacks from all Account Agreements shall be debited against the Sellers' reserve account and the net credit balance shall be rebated to the Sellers in accordance with Platinum's standard rebate practices, *provided, however,* that in the event that Platinum shall over advance any amounts against the Purchase Price pursuant to one of more over advance letters (the "Over Advance Amounts"), Platinum shall have the right to withhold 33% of any amounts collected from the Account Debtors in Sellers' reserve account until such time as any such withheld amounts shall equal the Over Advance Amount together with any Fees and expenses associated therewith. Notwithstanding anything herein to the contrary, Platinum shall have the right to withhold any rebates so long as the Net Owing Exposure shall be 75% or greater. For the purposes of this Section 2, "Net Owing Exposure" shall mean a number expressed in percentage resulting from the fraction (a) the numerator of which is the amount of any Net Owing (as defined in the client summary reports periodiacally made available to Sellers) including Advances, Fees and other reserve charges associated therewith at any given time, and (b) the denominator of which is Accounts Receivable of less than 90 days. Updated account information will be posted weekly on Platinum's website and Sellers hereby agree that account information and computations contained therein shall be presumptively deemed to be correct and accurate and all the amounts set forth therein shall be binding on Sellers unless Sellers, on or before the thirtieth (30th) day following the initial posting of the information on Platinum's website, provides to Platinum written objection as to the posted account information stating with reasonable specificity the information or computations to which Client objects and providing a detailed statement of the reasons for such objection. In the event Sellers fail to timely object, Sellers shall be deemed to have knowingly and voluntarily waived any objection or claim based on the information therein and for all preceding months. Capitalized terms not herein defined shall have the respective meanings attributed thereto in the Account Agreement. In the event of any conflict between the provisions of an Account Agreement and this Factoring Agreement, the provisions of this Factoring Agreement shall govern and control. Notwithstanding the first sentence of this Section 2, if either Sellers or Platinum shall fail to execute an Account Agreement with respect to a particular Account Receivable tendered by Sellers to Platinum, and Platinum shall nevertheless pay an Advance Amount to Sellers for such Account Receivable, Platinum shall be presumed conclusively to have purchased, and Sellers shall be presumed conclusively to have sold, such Account Receivable pursuant to an Account Agreement, and such Account Receivable shall be governed by the terms and conditions (including, without limitation, Sellers' representations, warranties and covenants to Platinum contained therein) set forth in the Account Agreement in the form heretofore provided to Sellers.

3. <u>Conditions Precedent.</u>  Platinum shall not be required to purchase any Accounts Receivable pursuant to an Account Agreement unless and until each of the following conditions shall have been satisfied:

(a)  Platinum and each Seller shall have entered into a Security Agreement in the form heretofore provided to Seller (the "Security Agreement"), to secure each Seller's performance of the representations, warranties and covenants set forth in the Account Agreements on each Seller's part to be performed (the "Representations") (but not the payment of the Accounts Receivable purchased thereby);

(b)  Robert Egizii shall have executed and delivered to Platinum a Performance Guaranty in the form heretofore provided to Sellers (the "Performance Guaranty"), with respect to Sellers' performance of the Representations on Sellers' part to be performed (but not the payment of the Accounts Receivable purchased thereby);

(c)  Sellers shall have authorized Platinum to file Uniform Commercial Code financing statements with the appropriate filing officer or officers in each jurisdiction where, in the reasonable opinion of Platinum, such filing is necessary or desirable to perfect the security interests granted pursuant to the Security Agreement and to provide notice of the factoring arrangement;

(d)  Sellers shall have executed and delivered to Platinum an Account Agreement in the form heretofore provided to Sellers, together with the schedule of proposed Accounts Receivable attached thereto as Schedule A, which Schedule A shall be duly executed and dated by Seller;

(e)  Platinum shall have received the opinion of legal counsel for Sellers in form and substance satisfactory to Platinum;

(f)  Platinum shall have received from Robert Egizii:

(i)  A duly executed and acknowledged second mortgage, assignment of leases of rents in form and substance satisfactory to Platinum with respect to the real property located at Fifth and Jefferson, Springfield, Illinois (the "Real Property" and the "Mortgage", respectively) securing the obligations of the Sellers and such Mortgage shall have been duly recorded or filed (or provision therefore entirely satisfactory to Platinum and its counsel shall have been made) and all taxes, fees and other expenses in connection therewith shall have been duly paid in full (or provided for as aforesaid);

(ii)  A UCC-1 Financing Statement suitable for filing centrally and locally in the office of the Secretary of State of the State of Illinois and the office of the town in which the Real Property is located showing Platinum as a secured party and customer as debtor with respect to the mortgages (relating to the fixtures covered thereby) and the assignment of leases in form and substance satisfactory to Platinum;

(iii)  an ALTA form of title insurance issued by a title insurance company licensed to do business in Illinois and satisfactory to Platinum in an amount equal to $2,000,000.00 with coverage and in form satisfactory to Platinum, insuring the

interest of Platinum under the Mortgage as a valid second mortgage lien on the Real Property and improvements thereon subject to material exceptions;

(iv)    an original policies of insurance (certificate of insurance in the case of blanket policies, together with copies of the policies to which such certificates relate) maintained with responsible insurance companies acceptable to Platinum insuring the Real Property against all risks fire and casualty and other hazards of such types as is customary in the case of property similar to the Real Property in an amount not less than the replacement value thereof. Such policy shall: (i) name Platinum as a loss payee as its interests may appear; (ii) contain a non-contributory standard mortgagee clause; (iii) shall also provide that no cancellation, expiration, reduction of amount or other adverse change in coverage of any such policy or any portion thereof shall be effective for a period of at least 30 days after receipt by Platinum of written notice thereof; (iv) shall also provide that if all or any part of such policy is not renewed or is allowed to lapse, the insurer will forthwith give notice to Platinum; (vi) shall provide further that such policy shall be primary coverage without right of contribution from any other insurance that may be carried by customer or Platinum and that all the provisions thereof, except limits of liability, shall operate in the same manner as if there was a separate policy covering each insurer, and such policy shall otherwise be reasonably satisfactory to Platinum;

(v)    an instrument in form and substance satisfactory to Platinum providing for the assignment of any proceeds payable under split dollar life insurance policies maintained by EEI Holding Corporation (the "Policies") on the life of Robert Egizii, which assignment shall be held in escrow until such time as the assignment previously provided by EEI Holding Corporation have been released by Bank of Springfield Bank and/or Illinois National Bank, as assignee, and terminated and EEI Holding Corporation shall take any and all steps necessary to obtain such releases of the Policies once Bank of Springfield Bank and/or Illinois National Bank have been paid in full;

(vi)    an instrument in form and substance satisfactory to Platinum providing for the assignment of any cash value payable under a life insurance policy maintained by Robert Egizii on the life of Robert Egizii (the "Policy"), which assignment shall be held in escrow until such time as the assignment previously provided by Robert Egizii have been released by the Bank of Springfield Bank and/or Illinois National Bank, as assignee, and terminated, and Robert Egizii shall take any and all steps necessary to obtain such releases of the Policy once Bank of Springfield Bank and/or Illinois National Bank have been paid in full;

(vii)    A security interest in all of the ownership interests held by Robert Egizii and 79% of the ownership interests of the Egizii Family Limited Partnership in Downtown Property, LLC (the "LLC"), together with a duly executed instrument from all of the members of such LLC acknowledging the collateral security interest and the admittance of Platinum as a member upon the realization of such ownership interests; and

(viii)    Within ninety (90) days of the execution of this Factoring Agreement, an additional Collateral (as such term is defined in the Security Agreement) which

4

Collateral shall have a value of no less than $2,000,000 (TWO MILLION U.S. DOLLARS), *provided,* that the value and the nature of the Collateral shall be subject to Platinum's sole and complete satisfaction and Robert Egizii will sign any and all documents required by Platinum in order to evidence and perfect such Collateral; *provided, further,* that in the event that Robert Egizii fails to render same, Platinum shall have the right to withhold monies out of the Aggregate Purchase Price Balance up to an amount of $2,000,000.00 which amount shall be released to Robert Egizii upon providing the Collateral referred to in this clause (vii). In the event that Egizii shall have provided Platinum no later than 12 days from the date hereof an appraisal report (the "Appraisal") from an appraisal company acceptable to Platinum covering the market value of the professional office building identified as One Old Capital North Plaza, Springfield, Illinois (the "Property"), which Appraisal shall estimate the market value of the Property to be no less than $12 million, the value of such additional Collateral provided by Egizii may have a value of no less than $1,000,000.

(g)    Platinum shall have received from the Egizii Family Limited Partnership (the "LP") a junior mortgage (the "Junior Mortgage") in form and substance satisfactory to Platinum with respect to the real property located at Rural Route Central (the "Farm") securing the obligations of the Sellers up to 79% of the LP's right, title and interest in the farm and such Mortgage shall have been duly recorded or filed (or provision therefore entirely satisfactory to Platinum and its counsel shall have been made) and all taxes, fees and other expenses in connection therewith shall have been duly paid in full (or provided for as aforesaid). Platinum shall agree to release and discharge the Junior Mortgage in the event that Robert Egizii provides to Platinum at any time additional Collateral which Collateral shall have a value of no less than $3,000,000.00 (THREE MILLION U.S. DOLLARS), *provided,* that the value and nature of the Collateral shall be subject to Platinum's sole and absolute satisfaction and Robert Egizii and the LP shall sign any and all documents required by Platinum in order to evidence and perfect such Collateral, *provided, further,* that if Robert Egizii provided the additional Collateral in the amount of $2,000,000, or $1,000,000 upon furnishing the satisfactory Appraisal, referred to in Subsection 3(f)(viii), Robert Egizii's obligations under this Subsection 3(g) shall be to provide an additional Collateral having a value of not less than $1,000,000.00 (ONE MILLION U.S. DOLLARS); and

(h)    The Net Owing Exposure is less than 75%.

Platinum's failure to require the satisfaction of any one or more of these conditions precedent shall not be deemed a waiver thereof, nor shall such failure in any way alter, modify or vitiate Sellers' obligations hereunder or any guarantor's obligations under the respective Performance Guaranties.

4.    Cross-Collateralization.    If a Default (as defined in the Security Agreement) shall have occurred, Platinum shall have the right, which may be exercised in its sole and absolute discretion at any time and from time to time during the continuance of such Default, to apply all amounts collected with respect to Accounts Receivable, as follows, before any payment from such collections shall be made to Sellers: (i) first, against the unreimbursed balance of the Advance Amounts made by Platinum to Sellers with respect to Accounts Receivable purchased from Sellers under one or more Account Agreements; (ii) next, to the payment of all fees and expense reimbursements (as described in the Account Agreements) accrued with respect to Accounts Receivable purchased by Platinum from Sellers, whether or not such fees have become due and payable pursuant to the terms of the Account Agreements; and (iii) the balance, if any, to the

5

payment of any and all other liabilities and obligations of Sellers to Platinum pursuant to 'this Factoring Agreement, the Security Agreement, the Account Agreements and any other agreement entered into between Platinum and Sellers concurrently or in connection herewith.

5. Collection of Accounts Receivable. Sellers will instruct all of the Account Debtors obligated with respect to the Accounts Receivable assigned to Platinum to mail or deliver payments on such Account Receivable directly to Platinum at its address herein above set forth or at such other address as Platinum may specify in a written notice to Seller. Such instructions shall not be rescinded or modified without Platinum's prior written consent. If, despite such instructions, Sellers shall receive any collections or other proceeds of the Accounts Receivable assigned to Platinum, Sellers shall immediately deliver such payments, in the exact form received, to Platinum. Failure to deliver such payments to Platinum as provided herein shall be deemed a default under the Factoring Agreement. All payments received by Platinum shall be applied as provided in Sections 4 and 5 above. Platinum shall have no liability to Sellers for any mistake in the application of any payment received with respect to any Account Receivable, provided Platinum shall have acted in good faith and without gross negligence in respect thereof.

6. Payment of Expenses and Taxes. Sellers will (a) pay or reimburse Platinum for all of Platinum's out-of-pocket costs and expenses incurred in connection with the preparation and execution of, and any amendment, supplement or modification to, this Factoring Agreement, the Security Agreement, any of the Account Agreements, the Mortgage and any other documents prepared in connection herewith or therewith, and the consummation of the transactions contemplated hereby and thereby, including, without limitation, the fees and disbursements of counsel to Platinum; (b) pay or reimburse Platinum for all its costs and expenses incurred in connection with the enforcement or preservation of any rights under this Factoring Agreement, the Security Agreement, the Account Agreements, the Mortgage and such other documents, and the verification of the Accounts Receivable and the creditworthiness of the Account Debtors, including, without limitation, fees and disbursements of counsel to Platinum which shall include but not be limited to the payment of Platinum's external counsel and in-house counsel's fees at his or her usual and customary hourly rate, which rate shall not be less than \$300.00 per hour nor greater than \$500.00 per hour, together with the expenses of said external and in house counsels; (c) pay, indemnify, and hold harmless from and against any and all recording and filing fees and any and all liabilities with respect to, or resulting from, any delay in paying, stamp, excise and other taxes, if any, which may be payable or determined to be payable in connection with the execution and delivery of, or consummation of, any of the transactions contemplated by, or any amendment, supplement—or modification of, or any waiver or consent under or in respect of, this Factoring Agreement, the Security Agreement, the Account Agreements and any such other documents; and (d) pay, indemnify, and hold Platinum harmless from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever with respect to the execution, delivery, enforcement and performance of this Factoring Agreement, the Security Agreement, the Account Agreements and such other documents (all of the foregoing being hereinafter collectively referred to as the "indemnified liabilities"); provided, however, that Sellers shall have no obligation hereunder to Platinum with respect to indemnified liabilities arising from (i) the gross negligence or willful misconduct of Platinum, (ii) salaries and other amounts payable by Platinum to its employees in the ordinary course of business or (iii) expenses incurred by Platinum (other than those specifically enumerated in clauses (a), (b) and (c) above) in the ordinary course of business in connection with the performance of its obligations hereunder. In recognition of Platinum's right to have its attorneys' fees and other expenses incurred in connection with this Factoring Agreement secured by

6

the collateral pledged by Sellers pursuant to the Security Agreement, notwithstanding payment in full of all obligations by Sellers, Platinum shall not be required to record any terminations or satisfactions of any of Platinum's liens on the collateral unless and until Sellers have executed and delivered to Platinum, a general release in a form reasonably satisfactory to Platinum. Sellers understand that this provision constitutes a waiver of its rights under section 9-513 of the Uniform Commercial Code. The agreements in this Section 6 shall survive the termination of this Factoring Agreement.

7. <u>Amendments.</u> Any provisions hereof may be modified or amended only by a written instrument expressly referred hereto duly executed on behalf of Platinum and Seller by their respective duly authorized representatives and no such amendment or modification hereof will in any way release or diminish any guarantor's obligations under their respective Performance Guaranties.

8. <u>Termination.</u> This Factoring Agreement shall begin on the date hereof and, unless sooner terminated as herein provided, terminate at 11:59 p.m. on the day immediately preceding the second year anniversary of the date hereof (the "Scheduled Term"), provided, that, Sellers may terminate this Agreement at the first year anniversary of the date hereof upon tendering to Platinum a cash payment of $1,000,000 in immediately available funds, which termination payment shall be reduced by $1/12^{th}$ for each month after the first year anniversary thereof, except that the Representations, and the remedies of Platinum for a breach of such Representations, shall survive the termination of this Factoring Agreement. Such termination shall not affect the rights of Platinum in enforcing its remedies against Sellers or any collateral upon any default by Sellers hereunder or upon a Default under the Security Agreement. This Factoring Agreement shall be deemed automatically renewed upon the expiration of the Scheduled Term for an additional periods of one year each (each, the "Rescheduled Term") unless Sellers shall deliver written notice of cancellation to Platinum at least 60 days but not more than 120 days prior to the expiration date then in effect hereunder.

9. <u>Fee.</u> The fee to be earned by Platinum for the purchase of Accounts Receivable from Sellers, as set forth in the Fee and Reimbursements Schedule attached to the Account Agreements (the "Fee"), has been established after negotiation between the parties and is based upon Seller's commitment to deliver to Platinum not less than $3,000,000.00 per month of approved Accounts Receivable (the "Monthly Base Sales Amount") during each 30 day period (a "Term Month") of the Scheduled Term or Rescheduled Term, as applicable. In the event Seller delivers less than the Monthly Base Sales Amount in any Term Month, Seller agrees and acknowledges that Platinum shall be entitled to a minimum fee during such Term Month (the "Minimum Fee") as set forth herein below:

(a) If the aggregate amount of approved Accounts Receivable delivered by Sellers to Platinum during any Term Month is less than the Monthly Base Sales Amount, Sellers shall pay to Platinum a Minimum Fee on account of such Term Month. Such Minimum Fee shall be equal to the product of (i) the actual aggregate fees earned by Platinum from the purchase of Accounts Receivable from Sellers for the applicable Term Month (or then expired portion thereof) (the "Partial Fee") and (ii) a fraction, the numerator of which is the Monthly Base Sales Amount and the denominator of which is the actual aggregate amount of Accounts Receivable theretofore delivered by Sellers in such Term Month, less (iii) the Partial Fee.

(b) If, in any Term Month, Seller shall·deliver no Accounts Receivable to Platinum, then Seller shall pay to Platinum in respect of such Term Month a Minimum Fee equal to the product of (i) the Monthly Base Sales Amount and (ii) a fraction, the numerator of which is the aggregate Fees theretofore earned by Platinum pursuant to this Factoring Agreement and the denominator of which is the actual aggregate amount of Accounts Receivable theretofore purchased by Platinum pursuant to this Factoring Agreement. $3,000,000 \times \frac{total\ fees}{total\ A/R\ sold}$

(c) In the event Seller delivers no Accounts Receivable whatsoever to Platinum during the term this Factoring Agreement, or any extensions hereof, Seller shall pay to Platinum a Minimum Fee equal to the product of (i) the minimum Discount as set forth in the Fee and Reimbursements Schedule of the Purchase and Sale Agreement, and (ii) the total amount of approved Accounts Receivable committed by Seller to be delivered to Platinum under this Factoring Agreement (a "No Delivery Fee").

10.     Termination by Platinum.     Notwithstanding anything to the contrary herein contained, this Factoring Agreement may be terminated by Platinum, in Platinum's sole discretion on three (3) days' written notice to Seller if, for a period of forty five (45) days, Seller shall deliver no Accounts Receivable to Platinum for purchase as herein provided     (a "No Delivery Termination"). Upon any such No Delivery Termination, Seller shall pay to Platinum either the No Delivery Fee or other applicable Minimum Fee, whichever is greater, each to be calculated as above-provided, for each and every unexpired Term Month remaining in the Scheduled Term or Rescheduled Term, as applicable.

11. Notices. All notices and other communications hereunder shall be deemed to have been sufficiently given when mailed, postage prepaid, by certified or registered mail, sent by courier or telefaxed, return receipt requested, or confirmation of receipt requested in the case of a telefax, and the sender shall have received such return receipt or confirmation, addressed to the party intended to receive the same at the address herein above set forth. Each of the parties hereto shall have the right to rely on as an original any notice given hereunder by telefax as aforesaid.

12. Successors, Governing Law, Consent to Jurisdiction. This Factoring Agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto, except that this Factoring Agreement may not be assigned by Sellers without the prior written consent of Platinum. This Factoring Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed exclusively within such state, without regard to the conflicts of laws provisions thereof. The parties hereto mutually agree that any legal action relating to or arising from the Factoring Agreement, the Security Agreement, the Account Agreements or the Performance Guaranty (or Guaranties), if any, or relating in any way to the factoring relationship between Platinum and the Seller and Guarantor(s), shall be brought, at Platinum's sole discretion, and maintained only in (a) the Superior Court of the State of New Jersey, County of Bergen, (b) the federal courts in and for the District of New Jersey, Newark vicinage, (c) the Supreme Court of the State of New York, County of New York, or (d) the federal courts in and for the Southern District of New York (the "Courts of Jurisdiction"), and the parties hereto expressly consent and agree to, and waive any and all objections to (a) the jurisdiction of the Courts of Jurisdiction over (i) any such legal or equitable action and (ii) the parties hereto and (iii) to any legal or equitable relief granted thereby and (b) to the laying of venue in any of the Courts of Jurisdiction (such waiver of objections include, but not limited to, any objection based on any claim of inconvenient forum or improper venue). The parties expressly agree that no legal action may be maintained between or among the parties hereto

other than in the Courts of Jurisdiction, however, nothing in this paragraph shall be construed to limit the rights of Platinum to (a) domesticate, or otherwise pursue, any judgment obtained in the Courts of Jurisdiction in any other court, state, territory or nation or to (b) take any actions which are required by law to be taken in a court other than one of the Courts of Jurisdiction, including, but not limited to, any actions to enforce Platinum's rights in and to any Collateral, as defined by the Security Agreement.

13. <u>Jury Trial Waiver.</u> The parties hereto do hereby waive and relinquish any and all right to a jury trial in any action, case or proceeding arising out of, or relating to, this agreement and/or the related agreements

14. <u>Consent to Accept Service of Process.</u> The parties hereby expressly waives any and all requirements related to the service of legal process, of any type or kind ("Process") in or for any legal action, case or proceeding arising hereunder or relating to the factoring relationship of the parties, and hereby agree to accept the service of any and all such Process by overnight delivery, certified or regular mail, facsimile transmission and/or electronic mail with such Process followed by regular mail, in each case sent to the address specified herein, with such Process deemed received the parties on the date next following the date on which Platinum, or its agents, sent such process. Any Process sent in any of the foregoing methods shall be deemed to be legal and valid service of Process, and any and all dates for answering or responding to such process shall commence as if the Process was served in accordance with the applicable court rules of the jurisdiction in which such action, case or proceeding is pending. For purposes of this Paragraph the address for the parties herein shall be presumptively deemed to be the correct address to which each of the parties may serve Process to the other party.

15. <u>Bankruptcy.</u> The parties expressly agree that in the event any Seller voluntarily files for protection pursuant to any provision of the United States Bankruptcy Code or, in the event an involuntary petition in bankruptcy is filed against any Seller, (a) this Factoring Agreement shall automatically terminate upon such filing, and (b) Sellers' obligations under this Factoring Agreement, the Security Agreement, the Account Agreements, the Mortgage and the Performance Guaranties, if any, shall be automatically accelerated and all sums due under any provision of the aforementioned documents shall be immediately due and payable. Following either of the aforementioned bankruptcy filings, Platinum may elect to offer financing to the debtor-in-possession, but nothing in this paragraph shall obligate Platinum to offer or provide such financing.

16. <u>Merger.</u> It is understood and agreed that all understandings and agreements heretofore had between the parties, if any, with respect to the subject matter hereof are merged into this Factoring Agreement which alone fully and completely expresses their agreement.

17. <u>Audit.</u> Platinum shall be entitled in its sole discretion, upon at least two (2) business days notice to Sellers, to conduct or cause to be conducted an audit of Sellers' books and records and Sellers hereby agrees to make available all invoices, bills, bank books and account statements, cancelled checks, accounts receivable and payable ledgers, tax returns and like financial information, and otherwise fully to cooperate with Platinum or its designated representative, in connection therewith. Sellers shall pay upon demand as set forth in the Account Agreement(s) the cost of not more than two (2) of such audits performed in any twelve (12) month period; provided, however, that if there shall occur a Default and this Agreement shall not be terminated by Platinum, Seller shall thereafter pay the cost of any and all such audits conducted or caused to be conducted by Platinum.

9

18. <u>Consultation with Legal Counsel</u>: Sellers acknowledge that they have consulted with legal counsel of their own choosing with respect to this Factoring Agreement and that Sellers' legal counsel has advised it that the terms of this Factoring Agreement are fully binding and enforceable under New York law.

19. <u>Use of Name, Logos and Trademarks</u>: Sellers agree that Platinum shall have the right to advertise its relationship with Sellers in any medium whatsoever, including but not limited to, Platinum's website, printed marketing materials, solicitations, newspapers or other periodicals, internet, television and radio. Sellers further agree that with respect to such advertising and marketing Platinum may utilize any and all names, logos and/or trademarks/service marks owned by, utilized by or licensed to Seller (collectively, "Sellers' Marks"), and Sellers, jointly and severally, hereby (a) represent that it has the full and requisite right and authority to grant permission to Platinum to utilize Sellers Mark's (b) hereby specifically grants to Platinum an irrevocable license to utilize Sellers' Marks as set forth herein. Sellers further agree to and they shall hold Platinum harmless and defend Platinum, at its sole cost and expense, from and against any and all claims, disputes, suits, and causes of action whatsoever, including Platinum's legal fees, with respect to any claim, action, case or proceeding relating to Platinum's use of Sellers' Marks.

IN WITNESS WHEREOF, the parties hereto have executed this Factoring Agreement as of the day and year first above written.

PLATINUM FUNDING SERVICES LLC

By: _William T. Rooney_

Name: William T. Rooney

Title:   President


EEI HOLDING CORPORATION

By: _____

Name: Robert Egizii

Title:   President and Chief Executive Officer


OLSON ELECTRIC CO., INC.

By: _____

Name: Robert Egizii

Title:   President and Chief Executive Officer


_____

Robert Egizii

Solely for the purposes of Section 3(f).


EGIZII FAMILY LIMITED PARTNERSHIP

By: _____

Name: Robert Egizii

Title:   General Partner

Solely for the purposes of Section 3(g).

11

Acknowledgment

STATE OF _Illinois_      :
                        : SS:
COUNTY OF _Sangamon_

On this 25 day of August, 2006, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation, an Illinois corporation d/b/a BRH Builders & Constructors, Egizii Electric, Inc., Sullivan Electric, Inc., and that he is the President and Chief Executive Officer of Olson Electric Co., Inc., a Florida corporation, the corporations described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporations for the uses and purposes in said corporations set forth.

Notary Public

```
OFFICIAL SEAL
VIRGINIA L. BAYLESS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-18-2008
```

Exhibit B

**PLATINUM FUNDING SERVICES LLC**
Two University Plaza
Hackensack, NJ 07601
Phone (201) 487 – 6555

PFC TRANSACTION #: _____

**PURCHASE AND SALE AGREEMENT**

Name and Address of Client ("Seller"): EEI HOLDING CORPORATION, 700 North MacArthur Blvd., Springfield, Illinois 62702

Aggregate Amount of Invoices (the "Accounts Receivable"): $ _____

Advance Amount (the "Advance Amount"): $ _____

Seller and Platinum Funding Services LLC ("Platinum"); hereby agree to the following terms and conditions of this Purchase and Sale Agreement:

### 1. Purchase and Sale of Invoices.

(a)  Seller hereby sells, assigns, transfers, conveys and delivers to Platinum and Platinum hereby purchases and receives from Seller, all of Seller's right, title and interest in and to the Accounts Receivable. The Accounts Receivable and the customers of Seller who are obligated to pay such Accounts Receivable (the "Account Debtors") are set forth on Schedule A attached hereto and made a part hereof.

(b) Platinum shall, within two (2) business days of Platinum's receipt of a fully executed original of this Purchase and Sale Agreement, together with all documentation required hereby, advise Seller of the approved Accounts Receivable and Advance Amount and shall deliver such Advance Amount within one (1) business days thereof. Such documentation shall include, but not be limited to, original and at least one (1) copy of invoices, proof of delivery and addressed envelopes for each invoice. Platinum will, upon collection of the Accounts Receivable from the Account Debtors, pay to Seller the Net Balance. The term "Net Balance" means the Aggregate Amount of Invoices so collected less (a) the Advance Amount and (b) the fee (including reimbursable out-of-pocket expenses) earned by Platinum pursuant to the Fee and Reimbursements Schedule attached hereto and made a part hereof.

### 2. Seller's Representations. Seller represents, warrants and covenants to Platinum that:

(a)  Seller is the sole owner of the Accounts Receivable and none of the Accounts Receivable have previously been assigned or encumbered in any manner; Seller has the full power and authority to sell each of the Accounts Receivable and has duly authorized their sale to Platinum pursuant to this Agreement.

(b)  Each Accounts Receivable is for the amount stated on Schedule A and is/are due and payable in accordance with its/their terms and there are no set-offs, deductions, discounts, reductions, disputes, contingencies or counterclaims against Seller or any of the Accounts Receivable (collectively, a "Chargeback").

(c)  The full amount of the Accounts Receivable is current and presently due and owing to Seller; payment is not contingent upon fulfillment of any other obligation at any time.

(d)  Platinum shall be the sole owner and holder of the Accounts Receivable, together with any products, contract rights and/or insurance claims (including the right to receive the proceeds thereof) relating to the Accounts Receivable, all of which are to be deemed a part of the Accounts Receivable. Seller expressly agrees to immediately notify Platinum of any payment on account of the Accounts Receivable which Seller receives and to hold any checks and other instruments so received in trust for Platinum and to deliver the same or the proceeds thereof to or at the direction of Platinum.

(e)  Platinum shall have the right of endorsement on all payments received in connection with each Account Receivable and Seller hereby appoints Platinum its attorney-in-fact, coupled with an interest, for such purpose.

(f)  None of the Accounts Receivable result from a sale to a parent, subsidiary or constitute a consignment, sale or return or bill and hold transaction.

(g)  The Accounts Receivable are free of all liens, claims, charges and encumbrances.

(h) Seller has filed all tax returns and forms required to be filed, and has paid in full all taxes, estimated taxes, withholding taxes, employment related taxes, interest, penalties, assessments, deficiencies, fees and other charges which have become due pursuant to such returns or without returns or pursuant to any assessments received by Seller. Such returns and forms are true and correct and Seller is not required to pay any other taxes except as shown on such returns. The amounts established as a liability for income and other taxes on the balance sheets of Seller are sufficient for all accrued and unpaid taxes of Seller, whether or not disputed, during or applicable to the periods ended on the dates of such balance sheets and all years and periods prior thereto for which Seller may be liable, and Seller will continue to make adequate provision for such taxes on Seller's books and records. Seller is not a party to any pending action or proceeding, and there is no action or proceeding threatened by any governmental authority against Seller, for assessment or collection of taxes; and no unresolved claim for assessment or collection of taxes has been asserted against Seller. There are no outstanding agreements or waivers extending the statutory period of limitations applicable to any tax return of Seller for any period.

(i) Seller hereby ratifies and confirms each of the statements, representations, and warranties made in the most current copy of its Corporate Certificate delivered to Platinum and in any other document or agreement in connection herewith.

(j) All the above representations are subject to the following:

(1) Seller has informed Platinum and Platinum acknowledges that certain receivables are on bonded jobs, and under Illinois law and the Seller's agreement with the bonding company all receivables on the bonded job will become the bonding company's if the Seller defaults on the job.

(2) Seller has further informed Platinum and Platinum acknowledges that Seller is in the construction business and under Illinois law (and in most other states) subcontractors and material suppliers have lien rights and that subcontractors and material suppliers shall not be paid on their monthly invoices until Seller receives payment of the 70 percent of accounts receivable sold, *provided, however,* that Seller represents, agrees and covenant that (X) the Advance Amount is promptly being applied towards the payment of Seller's obligations to its sub- contractors and material suppliers; and (Y) Seller shall contemporaneously with such payment render to Platinum satisfactory evidence, in the form of wire transfers or otherwise, of same.

3. **No Recourse to Seller.** Except as hereinafter provided, Seller shall not be liable to repay all or any portion of the Advance Amount if any portion of the Accounts Receivable are not paid by the Account Debtor(s). Notwithstanding the foregoing, in the event (a) any of the representations set forth in Section 2 shall be untrue in any respect or there shall otherwise occur a breach of Seller's obligations hereunder or (b) there shall be a reduction in the amount paid on an Account Receivable by means of allowance(s), discount(s), return(s), performance defense(s) or offset(s), Platinum may (i) take a corresponding reduction from any other payments received on account of Seller or any subsidiary, affiliate or division thereof and/or reduce by a corresponding amount any payment to be made by Platinum hereunder or under any other Purchase and Sale Agreement between Platinum and Seller and (ii) demand reimbursement directly from Seller for the amount of any such deficiency and Seller shall immediately deliver such amount to Platinum.

4. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely therein. The terms and provisions of Paragraphs 11, 12 and 13 of the Factoring Agreement are expressly incorporated herein.

5. **Charges.** (a) Platinum shall have the full power and authority to collect each Account Receivable, through legal action or otherwise and may, if necessary, in its sole discretion to facilitate collection, settle, compromise, or assign (in whole or in part) the claim for any of the Accounts Receivable, or otherwise exercise any other right now existing or hereafter arising with respect thereto, provided, however, that prior to any settlement or compromise, Platinum may give Seller notice of the proposed settlement or compromise and may grant Seller with an option, which Seller shall have one business day to exercise, to repurchase the Account Receivable, provided further, that until such time, Seller shall not contact any of the Account Debtor until it receives Platinum's written authorization to do so. Any such compromise or settlement which reduces the amount collected on account of such Accounts Receivable shall reduce any amount otherwise due to Seller. In addition, Platinum may apply up to twenty five (25%) percent of the amount of the Accounts Receivable in excess of the Advance Amount to Platinum's reasonable costs and expenses (including attorneys fees and

2

disbursements), of enforcing its rights against one or more of the Accounts Debtors. Seller and, if applicable, each Guarantor herein below set forth, shall and hereby are made liable, jointly and severally, in addition to any other obligations under this Agreement, for all costs and expenses (including attorney's fees and disbursements), together with interest on the amount of the Accounts Receivable from the date hereof to or including the date of collection at the maximum rate permitted by applicable law, in the event Platinum is required to enforce its rights hereunder against Seller or any such Guarantor by virtue of Seller's breach of the provisions of Section 2 hereof.

(b) Any payment to which Seller shall be entitled hereunder shall be reduced by the reimbursable out of pocket costs incurred by Platinum for Seller pursuant to the Fee and Reimbursements Schedule.

**6. Complete Agreement.** This Agreement sets forth the complete and entire understanding between Seller and Platinum and may only be modified by a written instrument signed by the party to be bound thereby. All understandings and agreements heretofore had between the parties, if any, with respect to the subject matter hereof are merged into this Purchase and Sale Agreement which alone fully and completely expresses their agreement, but shall, in all events, be governed by the terms and conditions of the Factoring Agreement between the parties.

**7. Parties to be Bound.** This Agreement shall bind Platinum and Seller, their respective successors and assigns, and all subsidiaries and affiliates of Seller, to which each of the provisions hereof shall apply; provided, however, that Seller may not assign its interest hereunder without Platinum's consent.

**8. Notices.** All notices and other communications hereunder shall be deemed to have been sufficiently given when (a) mailed, postage prepaid, by certified or registered mail, sent by courier or telefaxed, return receipt requested, or confirmation of receipt requested in the case of telefax, and (b) sender shall have received such return receipt or confirmation, addressed to the party intended to receive the same at the address hereinabove set forth. The parties shall have the right to rely on as an original any notice given hereunder by telefax as aforesaid.

Seller has entered into this Purchase and Sale Agreement as of the _____ day of _____, 2006.

PLATINUM FUNDING SERVICES LLC          EEI HOLDING CORPORATION

By: _William T. Rooney_                By: _____
Name: William T. Rooney                Name: Robert Egizii
Title:  President                      Title:  President and Chief Executive Officer

### FEE AND REIMBURSEMENTS SCHEDULE

The purchase price ("Purchase Price") for the Accounts Receivable purchased by Platinum shall be calculated from the invoice date and shall be based upon the date on which Platinum actually collects the amount due under the Accounts Receivable, as follows:

For invoices paid within 30 days, the Purchase Price shall be 98.0% of the amount of Accounts Receivable purchased and the Discount therefrom (the "Discount") shall be 2.0%.

For invoices paid after 30 days but within 40 days, the Purchase Price shall be 97.33% of the amount of Accounts Receivable purchased and the Discount shall be 2.67%.

For invoices paid after 40 days but within 50 days, the Purchase Price shall be 96.66% of the amount of Accounts Receivable purchased and the Discount shall be 3.34%.

For invoices paid after 50 days but within 60 days, the Purchase Price shall be 95.99% of the amount of Accounts Receivable purchased and the Discount shall be 4.01%.

For invoices paid after 60 days but within 70 days, the Purchase Price shall be 95.32% of the amount of Accounts Receivable purchased and the Discount shall be 4.68%.

For invoices paid after 70 days but within 80 days, the Purchase Price shall be 94.65% of the amount of Accounts Receivable purchased and the Discount shall be 5.35%.

For invoices paid after 80 days but within 90 days, the Purchase Price shall be 93.98% of the amount of Accounts Receivable purchased and the Discount shall be 6.02%.

For invoices paid after 90 days, the Purchase Price shall be 85.00% of the amount of Accounts Receivable purchased and the Discount shall be 15.00%.

The Discount shall in no event exceed 15%.
Five (5) days will be added for collection.
Platinum has or will incur certain customary and regular charges on behalf of Seller for which Platinum shall be entitled to reimbursement as a deduction from amounts to which Seller may otherwise be entitled under the Purchase and Sale Agreement, as follows:

| | ITEM | AMOUNT |
|---|---|---|
| 1. | Postage; first class mail of Seller's invoices to Account Debtors | U.S. Postal Service prevailing rates |
| 2. | Preparation of credit report | $65.00 per report |
| 3. | Domestic wire transfer of immediately available funds | $25.00 per transfer |
| 4. | Overnight mail | $35.00 per package |
| 5. | Check certification/Cashier's checks | $25.00 per check |
| 6. | Initial UCC search and filing fee | $350.00 or actual if greater |
| 7. | Continuation search fees | $250.00 |
| 8. | Audit Charge | $700.00 per diem |
| 9. | Monthly Reports Access | $ 50.00 per month |

4

SCHEDULE A
TO
PURCHASE AND SALE AGREEMENT

DATED _____, 2006

BETWEEN PLATINUM FUNDING SERVICES LLC
AND
EEI HOLDING CORPORATION

Request For Sale of Invoices

| Customer Name | Invoice Date | Invoice No. | Invoice Amount $ |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| | | TOTAL | |

[Add additional sheets if required]

The undersigned hereby requests Platinum Funding Services LLC to purchase the above described invoices, each and all of which are validly now due and owing, pursuant to the Purchase and Sale Agreement.

EEI HOLDING CORPORATION


By:_____
Name: Robert Egizii
Title:   President and Chief Executive Officer

5

## Acknowledgment

STATE OF I̲L̲L̲I̲N̲O̲I̲S̲

               : SS:

COUNTY OF S̲a̲n̲g̲a̲m̲o̲n̲

On this 2̲5̲th day of August, 2006, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation, an Illinois corporation, the corporation described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporation for the uses and purposes in said corporation set forth.

_____
Notary Public

```
OFFICIAL SEAL
VIRGINIA L. BAYLESS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-18-2008
```

**PLATINUM FUNDING SERVICES LLC**
Two University Plaza
Hackensack, NJ 07601
Phone (201) 487 - 6555

PFC TRANSACTION #: _____

### PURCHASE AND SALE AGREEMENT

Name and Address of Client ("Seller"): EEI HOLDING CORPORATION d/b/a SULLIVAN ELECTRIC, INC., 2102 East Main, Marion, Illinois 62959

Aggregate Amount of Invoices (the "Accounts Receivable"): $ _____

Advance Amount (the "Advance Amount"): $ _____

Seller and Platinum Funding Services LLC ("Platinum"); hereby agree to the following terms and conditions of this Purchase and Sale Agreement:

**1. Purchase and Sale of Invoices.**

(a)   Seller hereby sells, assigns, transfers, conveys and delivers to Platinum and Platinum hereby purchases and receives from Seller, all of Seller's right, title and interest in and to the Accounts Receivable. The Accounts Receivable and the customers of Seller who are obligated to pay such Accounts Receivable (the "Account Debtors") are set forth on Schedule A attached hereto and made a part hereof.

(b)   Platinum shall, within two (2) business days of Platinum's receipt of a fully executed original of this Purchase and Sale Agreement, together with all documentation required hereby, advise Seller of the approved Accounts Receivable and Advance Amount and shall deliver such Advance Amount within one (1) business days thereof. Such documentation shall include, but not be limited to, original and at least one (1) copy of invoices, proof of delivery and addressed envelopes for each invoice. Platinum will, upon collection of the Accounts Receivable from the Account Debtors, pay to Seller the Net Balance. The term "Net Balance" means the Aggregate Amount of Invoices so collected less (a) the Advance Amount and (b) the fee (including reimbursable out-of-pocket expenses) earned by Platinum pursuant to the Fee and Reimbursements Schedule attached hereto and made a part hereof.

**2. Seller's Representations.**  Seller represents, warrants and covenants to Platinum that:

(a)   Seller is the sole owner of the Accounts Receivable and none of the Accounts Receivable have previously been assigned or encumbered in any manner; Seller has the full power and authority to sell each of the Accounts Receivable and has duly authorized their sale to Platinum pursuant to this Agreement.

(b)   Each Accounts Receivable is for the amount stated on Schedule A and is/are due and payable in accordance with its/their terms and there are no set-offs, deductions, discounts, reductions, disputes, contingencies or counterclaims against Seller or any of the Accounts Receivable (collectively, a "Chargeback").

(c)   The full amount of the Accounts Receivable is current and presently due and owing to Seller; payment is not contingent upon fulfillment of any other obligation at any time.

(d)   Platinum shall be the sole owner and holder of the Accounts Receivable, together with any products, contract rights and/or insurance claims (including the right to receive the proceeds thereof) relating to the Accounts Receivable, all of which are to be deemed a part of the Accounts Receivable. Seller expressly agrees to immediately notify Platinum of any payment on account of the Accounts Receivable which Seller receives and to hold any checks and other instruments so received in trust for Platinum and to deliver the same or the proceeds thereof to or at the direction of Platinum.

(e)   Platinum shall have the right of endorsement on all payments received in connection with each Account Receivable and Seller hereby appoints Platinum its attorney-in-fact, coupled with an interest, for such purpose.

(f)   None of the Accounts Receivable result from a sale to a parent, subsidiary or constitute a consignment, sale or return or bill and hold transaction.

(g)   The Accounts Receivable are free of all liens, claims, charges and encumbrances.

(h) Seller hereby ratifies and confirms each of the statements, representations, and warranties made in the most current copy of its Corporate Certificate delivered to Platinum and in any other document or agreement in connection herewith.

(i)    All the above representations are subject to the following:

(1)    Seller has informed Platinum and Platinum acknowledges that certain receivables are on bonded jobs, and under Illinois law and the Seller's agreement with the bonding company all receivables on the bonded job will become the bonding company's if the Seller defaults on the job.

(2)    Seller has further informed Platinum and Platinum acknowledges that Seller is in the construction business and under Illinois law (and in most other states) subcontractors and material suppliers have lien rights and that subcontractors and material suppliers shall not be paid on their monthly invoices until Seller receives payment of the 70 percent of accounts receivable sold, provided, however, that Seller represents, agrees and covenant that (X) the Advance Amount is promptly being applied towards the payment of Seller's obligations to its sub- contractors and material suppliers; and (Y) Seller shall contemporaneously with such payment render to Platinum satisfactory evidence, in the form of wire transfers or otherwise, of same.

**3. No Recourse to Seller.** Except as hereinafter provided, Seller shall not be liable to repay all or any portion of the Advance Amount if any portion of the Accounts Receivable are not paid by the Account Debtor(s). Notwithstanding the foregoing, in the event (a) any of the representations set forth in Section 2 shall be untrue in any respect or there shall otherwise occur a breach of Seller's obligations hereunder or (b) there shall be a reduction in the amount paid on an Account Receivable by means of allowance(s), discount(s), return(s), performance defense(s) or offset(s), Platinum may (i) take a corresponding reduction from any other payments received on account of Seller or any subsidiary, affiliate or division thereof and/or reduce by a corresponding amount any payment to be made by Platinum hereunder or under any other Purchase and Sale Agreement between Platinum and Seller and (ii) demand reimbursement directly from Seller for the amount of any such deficiency and Seller shall immediately deliver such amount to Platinum.

**4. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely therein. The terms and provisions of Paragraph 11, 12, and 13 of the Factoring Agreement are expressly incorporated herein.

**5. Charges.** (a) Platinum shall have the full power and authority to collect each Account Receivable, through legal action or otherwise and may, if necessary, in its sole discretion to facilitate collection, settle, compromise, or assign (in whole or in part) the claim for any of the Accounts Receivable, or otherwise exercise any other right now existing or hereafter arising with respect thereto, provided, however, that prior to any settlement or compromise, Platinum may give Seller notice of the proposed settlement or compromise and may grant Seller with an option, which Seller shall have one business day to exercise, to repurchase the Account Recivable, provided further, that until such time, Seller shall not contact any of the Account Debtor until it receives Platinum's written authorization to do so. Any such compromise or settlement which reduces the amount collected on account of such Accounts Receivable shall reduce any amount otherwise due to Seller. In addition, Platinum may apply up to twenty five (25%) percent of the amount of the Accounts Receivable in excess of the Advance Amount to Platinum's reasonable costs and expenses (including attorneys fees and disbursements) of enforcing its rights against one or more of the Accounts Debtors. Seller and, if applicable, each Guarantor herein below set forth, shall and hereby are made liable, jointly and severally, in addition to any other obligations under this Agreement, for all costs and expenses (including attorney's fees and disbursements), together with interest on the amount of the Accounts Receivable from the date hereof to or including the date of collection at the maximum rate permitted by applicable law, in the event Platinum is required to enforce its rights hereunder against Seller or any such Guarantor by virtue of Seller's breach of the provisions of Section 2 hereof.

(b) Any payment to which Seller shall be entitled hereunder shall be reduced by the reimbursable out of pocket costs incurred by Platinum for Seller pursuant to the Fee and Reimbursements Schedule.

**6. Complete Agreement.** This Agreement sets forth the complete and entire understanding between Seller and Platinum and may only be modified by a written instrument signed by the party to be bound thereby. All understandings and agreements heretofore had between the parties, if any, with respect to the subject matter hereof are merged into this

2

Purchase and Sale Agreement which alone fully and completely expresses their agreement, but shall, in all events, be governed by the terms and conditions of the Factoring Agreement between the parties.

**7. Parties to be Bound.** This Agreement shall bind Platinum and Seller, their respective successors and assigns, and all subsidiaries and affiliates of Seller, to which each of the provisions hereof shall apply; provided, however, that Seller may not assign its interest hereunder without Platinum's consent.

**8. Notices.** All notices and other communications hereunder shall be deemed to have been sufficiently given when (a) mailed, postage prepaid, by certified or registered mail, sent by courier or telefaxed, return receipt requested, or confirmation of receipt requested in the case of telefax, and (b) sender shall have received such return receipt or confirmation, addressed to the party intended to receive the same at the address hereinabove set forth. The parties shall have the right to rely on as an original any notice given hereunder by telefax as aforesaid.

Seller has entered into this Purchase and Sale Agreement as of the _____ day of _____, 2006.

PLATINUM FUNDING SERVICES LLC          EEI HOLDING CORPORATION d/b/a SULLIVAN ELECTRIC, INC.

By: _William T. Rooney_                By: _____

Name: William T. Rooney                Name: Robert Egizii

Title:  President                      Title:   President and Chief Executive Officer

## FEE AND REIMBURSEMENTS SCHEDULE

The purchase price ("Purchase Price") for the Accounts Receivable purchased by Platinum shall be calculated from the invoice date and shall be based upon the date on which Platinum actually collects the amount due under the Accounts Receivable, as follows:

For invoices paid within 30 days, the Purchase Price shall be 98.0% of the amount of Accounts Receivable purchased and the discount therefrom (the "Discount") shall be 2.0%.

For invoices paid after 30 days but within 40 days, the Purchase Price shall be 97.33% of the amount of Accounts Receivable purchased and the Discount shall be 2.67%.

For invoices paid after 40 days but within 50 days, the Purchase Price shall be 96.66% of the amount of Accounts Receivable purchased and the Discount shall be 3.34%.

For invoices paid after 50 days but within 60 days, the Purchase Price shall be 95.99% of the amount of Accounts Receivable purchased and the Discount shall be 4.01%.

For invoices paid after 60 days but within 70 days, the Purchase Price shall be 95.32% of the amount of Accounts Receivable purchased and the Discount shall be 4.68%.

For invoices paid after 70 days but within 80 days, the Purchase Price shall be 94.65% of the amount of Accounts Receivable purchased and the Discount shall be 5.35%.

For invoices paid after 80 days but within 90 days, the Purchase Price shall be 93.98% of the amount of Accounts Receivable purchased and the Discount shall be 6.02%.

For invoices paid after 90 days, the Purchase Price shall be 85.00% of the amount of Accounts Receivable purchased and the Discount shall be 15.00%.

The Discount shall in no event exceed 15%.

Five (5) days will be added for collection.

Platinum has or will incur certain customary and regular charges on behalf of Seller for which Platinum shall be entitled to reimbursement as a deduction from amounts to which Seller may otherwise be entitled under the Purchase and Sale Agreement, as follows:

| | ITEM | AMOUNT |
|---|---|---|
| 1. | Postage; first class mail of Seller's invoices to Account Debtors | U.S. Postal Service prevailing rates |
| 2. | Preparation of credit report | $65.00 per report |
| 3. | Domestic wire transfer of immediately available funds | $25.00 per transfer |
| 4. | Overnight mail | $35.00 per package |
| 5. | Check certification/Cashier's checks | $25.00 per check |
| 6. | Initial UCC search and filing fee | $350.00 or actual if greater |
| 7. | Continuation search fees | $250.00 |
| 8. | Audit Charge | $700.00 per diem |
| 9. | Monthly Reports Access | $ 50.00 per month |

SCHEDULE A

TO

PURCHASE AND SALE AGREEMENT

DATED _____, 2006

BETWEEN PLATINUM FUNDING SERVICES LLC

AND

EEI HOLDING CORPORATION d/b/a SULLIVAN ELECTRIC, INC.

<u>Request For Sale of Invoices</u>

| Customer Name | Invoice Date | Invoice No. | Invoice Amount $ |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| | | TOTAL | |

[Add additional sheets if required]

The undersigned hereby requests Platinum Funding Services LLC to purchase the above described invoices, each and all of which are validly now due and owing, pursuant to the Purchase and Sale Agreement.

EEI HOLDING CORPORATION d/b/a SULLIVAN ELECTRIC, INC.

By:_____

Name: Robert Egizii

Title:   President and Chief Executive Officer

## Acknowledgment

STATE OF _Illinois_ :

                   : SS:

COUNTY OF _Sangamon_

    On this _25th_ day of August, 2006, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation d/b/a Sullivan Electric, Inc., an Illinois corporation, the corporation described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporation for the uses and purposes in said corporation set forth.

_Virginia L. Bayless_
Notary Public

```
┌─────────────────────────────────┐
│         OFFICIAL SEAL           │
│     VIRGINIA L. BAYLESS         │
│ NOTARY PUBLIC, STATE OF ILLINOIS│
│ MY COMMISSION EXPIRES 8-18-2008 │
└─────────────────────────────────┘
```

**PLATINUM FUNDING SERVICES LLC**
Two University Plaza
Hackensack, NJ 07601
Phone (201) 487 - 6555

PFC TRANSACTION #: _____

PURCHASE AND SALE AGREEMENT

Name and Address of Client ("Seller"): EEI HOLDING CORPORATION d/b/a BRH BUILDERS & CONSTRUCTORS, 702 North MacArthur Blvd., Springfield, Illinois 62702

Aggregate Amount of Invoices (the "Accounts Receivable"): $ _____

Advance Amount (the "Advance Amount"): $ _____

Seller and Platinum Funding Services LLC ("Platinum"); hereby agree to the following terms and conditions of this Purchase and Sale Agreement:

## 1. Purchase and Sale of Invoices.

(a)    Seller hereby sells, assigns, transfers, conveys and delivers to Platinum and Platinum hereby purchases and receives from Seller, all of Seller's right, title and interest in and to the Accounts Receivable. The Accounts Receivable and the customers of Seller who are obligated to pay such Accounts Receivable (the "Account Debtors") are set forth on Schedule A attached hereto and made a part hereof.

(b)    Platinum shall, within two (2) business days of Platinum's receipt of a fully executed original of this Purchase and Sale Agreement, together with all documentation required hereby, advise Seller of the approved Accounts Receivable and Advance Amount and shall deliver such Advance Amount within one (1) business days thereof. Such documentation shall include, but not be limited to, original and at least one (1) copy of invoices, proof of delivery and addressed envelopes for each invoice. Platinum will, upon collection of the Accounts Receivable from the Account Debtors, pay to Seller the Net Balance. The term "Net Balance" means the Aggregate Amount of Invoices so collected less (a) the Advance Amount and (b) the fee (including reimbursable out-of-pocket expenses) earned by Platinum pursuant to the Fee and Reimbursements Schedule attached hereto and made a part hereof.

## 2. Seller's Representations. Seller represents, warrants and covenants to Platinum that:

(a)    Seller is the sole owner of the Accounts Receivable and none of the Accounts Receivable have previously been assigned or encumbered in any manner; Seller has the full power and authority to sell each of the Accounts Receivable and has duly authorized their sale to Platinum pursuant to this Agreement.

(b)    Each Accounts Receivable is for the amount stated on Schedule A and is/are due and payable in accordance with its/their terms and there are no set-offs, deductions, discounts, reductions, disputes, contingencies or counterclaims against Seller or any of the Accounts Receivable (collectively, a "Chargeback").

(c)    The full amount of the Accounts Receivable is current and presently due and owing to Seller; payment is not contingent upon fulfillment of any other obligation at any time.

(d)    Platinum shall be the sole owner and holder of the Accounts Receivable, together with any products, contract rights and/or insurance claims (including the right to receive the proceeds thereof) relating to the Accounts Receivable, all of which are to be deemed a part of the Accounts Receivable. Seller expressly agrees to immediately notify Platinum of any payment on account of the Accounts Receivable which Seller receives and to hold any checks and other instruments so received in trust for Platinum and to deliver the same or the proceeds thereof to or at the direction of Platinum.

(e)    Platinum shall have the right of endorsement on all payments received in connection with each Account Receivable and Seller hereby appoints Platinum its attorney-in-fact, coupled with an interest, for such purpose.

(f)    None of the Accounts Receivable result from a sale to a parent, subsidiary or constitute a consignment, sale or return or bill and hold transaction.

(g)    The Accounts Receivable are free of all liens, claims, charges and encumbrances.

(a) Seller hereby ratifies and confirms each of the statements, representations, and warranties made in the most current copy of its Corporate Certificate delivered to Platinum and in any other document or agreement in connection herewith.

(i)     All the above representations are subject to the following:

(1)     Seller has informed Platinum and Platinum acknowledges that certain receivables are on bonded jobs, and under Illinois law and the Seller's agreement with the bonding company all receivables on the bonded job will become the bonding company's if the Seller defaults on the job.

(2)     Seller has further informed Platinum and Platinum acknowledges that Seller is in the construction business and under Illinois law (and in most other states) subcontractors and material suppliers have lien rights and that subcontractors and material suppliers shall not be paid on their monthly invoices until Seller receives payment of the 70 percent of accounts receivable sold, provided, however, that Seller represents, agrees and covenant that (X) the Advance Amount is promptly being applied towards the payment of Seller's obligations to its sub- contractors and material suppliers; and (Y) Seller shall contemporaneously with such payment render to Platinum satisfactory evidence, in the form of wire transfers or otherwise, of same.

**3. No Recourse to Seller.** Except as hereinafter provided, Seller shall not be liable to repay all or any portion of the Advance Amount if any portion of the Accounts Receivable are not paid by the Account Debtor(s). Notwithstanding the foregoing, in the event (a) any of the representations set forth in Section 2 shall be untrue in any respect or there shall otherwise occur a breach of Seller's obligations hereunder or (b) there shall be a reduction in the amount paid on an Account Receivable by means of allowance(s), discount(s), return(s), performance defense(s) or offset(s), Platinum may (i) take a corresponding reduction from any other payments received on account of Seller or any subsidiary, affiliate or division thereof and/or reduce by a corresponding amount any payment to be made by Platinum hereunder or under any other Purchase and Sale Agreement between Platinum and Seller and (ii) demand reimbursement directly from Seller for the amount of any such deficiency and Seller shall immediately deliver such amount to Platinum.

**4. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely therein. The terms and provisions of Paragraph 11, 12 and 13 of the Factoring Agreement are expressly incorporated herein.

**5. Charges.** (a) Platinum shall have the full power and authority to collect each Account Receivable, through legal action or otherwise and may, if necessary, in its sole discretion to facilitate collection, settle, compromise, or assign (in whole or in part) the claim for any of the Accounts Receivable, or otherwise exercise any other right now existing or hereafter arising with respect thereto, provided, however, that prior to any settlement or compromise, Platinum may give Seller notice of the proposed settlement or compromise and may grant Seller with an option, which Seller shall have one business day to exercise, to repurchase the Account Recivable, provided further, that until such time, Seller shall not contact any of the Account Debtor until it receives Platinum's written authorization to do so. Any such compromise or settlement which reduces the amount collected on account of such Accounts Receivable shall reduce any amount otherwise due to Seller. In addition, Platinum may apply up to twenty five (25%) percent of the amount of the Accounts Receivable in excess of the Advance Amount to Platinum's reasonable costs and expenses (including attorneys fees and disbursements) of enforcing its rights against one or more of the Accounts Debtors. Seller and, if applicable, each Guarantor herein below set forth, shall and hereby are made liable, jointly and severally, in addition to any other obligations under this Agreement, for all costs and expenses (including attorney's fees and disbursements), together with interest on the amount of the Accounts Receivable from the date hereof to or including the date of collection at the maximum rate permitted by applicable law, in the event Platinum is required to enforce its rights hereunder against Seller or any such Guarantor by virtue of Seller's breach of the provisions of Section 2 hereof.

(b) Any payment to which Seller shall be entitled hereunder shall be reduced by the reimbursable out of pocket costs incurred by Platinum for Seller pursuant to the Fee and Reimbursements Schedule.

**6. Complete Agreement.** This Agreement sets forth the complete and entire understanding between Seller and Platinum and may only be modified by a written instrument signed by the party to be bound thereby. All understandings and agreements heretofore had between the parties, if any, with respect to the subject matter hereof are merged into this

Purchase and Sale Agreement which alone fully and completely expresses their agreement, but shall, in all events, be governed by the terms and conditions of the Factoring Agreement between the parties.

**7. Parties to be Bound.** This Agreement shall bind Platinum and Seller, their respective successors and assigns, and all subsidiaries and affiliates of Seller, to which each of the provisions hereof shall apply; provided, however, that Seller may not assign its interest hereunder without Platinum's consent.

**8. Notices.** All notices and other communications hereunder shall be deemed to have been sufficiently given when (a) mailed, postage prepaid, by certified or registered mail, sent by courier or telefaxed, return receipt requested, or confirmation of receipt requested in the case of telefax, and (b) sender shall have received such return receipt or confirmation, addressed to the party intended to receive the same at the address hereinabove set forth. The parties shall have the right to rely on as an original any notice given hereunder by telefax as aforesaid.

Seller has entered into this Purchase and Sale Agreement as of the \_\_\_\_\_ day of \_\_\_\_\_, 2006.

Case 1:08-cv-02482-WHP    Document 1    Filed 03/11/2008    Page 45 of 69

PLATINUM FUNDING SERVICES LLC

EEI HOLDING CORPORATION d/b/a BRH BUILDERS & CONSTRUCTORS

By: _William T. Rooney_

Name: William T. Rooney

Title: President

By: _Robert Egizii_

Name: Robert Egizii

Title: President and Chief Executive Officer

## FEE AND REIMBURSEMENTS SCHEDULE

The purchase price ("Purchase Price") for the Accounts Receivable purchased by Platinum shall be calculated from the invoice date and shall be based upon the date on which Platinum actually collects the amount due under the Accounts Receivable, as follows:

For invoices paid within 30 days, the Purchase Price shall be 98.0% of the amount of Accounts Receivable purchased and the discount therefrom (the "Discount") shall be 2.0%.

For invoices paid after 30 days but within 40 days, the Purchase Price shall be 97.33% of the amount of Accounts Receivable purchased and the Discount shall be 2.67%.

For invoices paid after 40 days but within 50 days, the Purchase Price shall be 96.66% of the amount of Accounts Receivable purchased and the Discount shall be 3.34%.

For invoices paid after 50 days but within 60 days, the Purchase Price shall be 95.99% of the amount of Accounts Receivable purchased and the Discount shall be 4.01%.

For invoices paid after 60 days but within 70 days, the Purchase Price shall be 95.32% of the amount of Accounts Receivable purchased and the Discount shall be 4.68%.

For invoices paid after 70 days but within 80 days, the Purchase Price shall be 94.65% of the amount of Accounts Receivable purchased and the Discount shall be 5.35%.

For invoices paid after 80 days but within 90 days, the Purchase Price shall be 93.98% of the amount of Accounts Receivable purchased and the Discount shall be 6.02%.

For invoices paid after 90 days, the Purchase Price shall be 85.00% of the amount of Accounts Receivable purchased and the Discount shall be 15.00%.

The Discount shall in no event exceed 15%.

Five (5) days will be added for collection.

Platinum has or will incur certain customary and regular charges on behalf of Seller for which Platinum shall be entitled to reimbursement as a deduction from amounts to which Seller may otherwise be entitled under the Purchase and Sale Agreement, as follows:

| | ITEM | AMOUNT |
|---|---|---|
| 1. | Postage; first class mail of Seller's invoices to Account Debtors | U.S. Postal Service prevailing rates |
| 2. | Preparation of credit report | $65.00 per report |
| 3. | Domestic wire transfer of immediately available funds | $25.00 per transfer |
| 4. | Overnight mail | $35.00 per package |
| 5. | Check certification/Cashier's checks | $25.00 per check |
| 6. | Initial UCC search and filing fee | $350.00 or actual if greater |
| 7. | Continuation search fees | $250.00 |
| 8. | Audit Charge | $700.00 per diem |
| 9. | Monthly Reports Access | $ 50.00 per month |

SCHEDULE A
TO
PURCHASE AND SALE AGREEMENT

DATED _____, 2006

BETWEEN PLATINUM FUNDING SERVICES LLC
AND
EEI HOLDING CORPORATION d/b/a BRH BUILDERS & CONSTRUCTORS

Request For Sale of Invoices

| Customer Name | Invoice Date | Invoice No. | Invoice Amount $ |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | | |
| | | TOTAL | |

[Add additional sheets if required]

The undersigned hereby requests Platinum Funding Services LLC to purchase the above described invoices, each and all of which are validly now due and owing, pursuant to the Purchase and Sale Agreement.

EEI HOLDING CORPORATION d/b/a BRH BUILDERS & CONSTRUCTORS


By:_____
Name: Robert Egizii
Title:   President and Chief Executive Officer

5

## Acknowledgment

STATE OF ‿‿ Illinois    :
                        : SS:
COUNTY OF Sangamon      :

On this 25th day of August, 2006, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation d/b/a BRH Builders & Constructors, an Illinois corporation, the corporation described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporation for the uses and purposes in said corporation set forth.

_Virginia L. Bayless_
Notary Public

```
OFFICIAL SEAL
VIRGINIA L. BAYLESS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-18-2008
```

**PLATINUM FUNDING SERVICES LLC**
Two University Plaza
Hackensack, NJ 07601
Phone (201) 487 - 6555                                                    PFC TRANSACTION #: _____

### PURCHASE AND SALE AGREEMENT

Name and Address of Client ("Seller"): EEI HOLDING CORPORATION d/b/a EGIZII ELECTRIC, INC., 700 North MacArthur Blvd., Springfield, Illinois 62702

Aggregate Amount of Invoices (the "Accounts Receivable"): $ _____

Advance Amount (the "Advance Amount"): $ _____

Seller and Platinum Funding Services LLC ("Platinum"); hereby agree to the following terms and conditions of this Purchase and Sale Agreement:

### 1. Purchase and Sale of Invoices.

(a)  Seller hereby sells, assigns, transfers, conveys and delivers to Platinum and Platinum hereby purchases and receives from Seller, all of Seller's right, title and interest in and to the Accounts Receivable. The Accounts Receivable and the customers of Seller who are obligated to pay such Accounts Receivable (the "Account Debtors") are set forth on Schedule A attached hereto and made a part hereof.

(b)  Platinum shall, within two (2) business days of Platinum's receipt of a fully executed original of this Purchase and Sale Agreement, together with all documentation required hereby, advise Seller of the approved Accounts Receivable and Advance Amount and shall deliver such Advance Amount within one (1) business days thereof. Such documentation shall include, but not be limited to, original and at least one (1) copy of invoices, proof of delivery and addressed envelopes for each invoice. Platinum will, upon collection of the Accounts Receivable from the Account Debtors, pay to Seller the Net Balance. The term "Net Balance" means the Aggregate Amount of Invoices so collected less (a) the Advance Amount and (b) the fee (including reimbursable out-of-pocket expenses) earned by Platinum pursuant to the Fee and Reimbursements Schedule attached hereto and made a part hereof.

### 2. Seller's Representations.  Seller represents, warrants and covenants to Platinum that:

(a)  Seller is the sole owner of the Accounts Receivable and none of the Accounts Receivable have previously been assigned or encumbered in any manner; Seller has the full power and authority to sell each of the Accounts Receivable and has duly authorized their sale to Platinum pursuant to this Agreement.

(b)  Each Accounts Receivable is for the amount stated on Schedule A and is/are due and payable in accordance with its/their terms and there are no set-offs, deductions, discounts, reductions, disputes, contingencies or counterclaims against Seller or any of the Accounts Receivable (collectively, a "Chargeback").

(c)  The full amount of the Accounts Receivable is current and presently due and owing to Seller; payment is not contingent upon fulfillment of any other obligation at any time.

(d)  Platinum shall be the sole owner and holder of the Accounts Receivable, together with any products, contract rights and/or insurance claims (including the right to receive the proceeds thereof) relating to the Accounts Receivable, all of which are to be deemed a part of the Accounts Receivable. Seller expressly agrees to immediately notify Platinum of any payment on account of the Accounts Receivable which Seller receives and to hold any checks and other instruments so received in trust for Platinum and to deliver the same or the proceeds thereof to or at the direction of Platinum.

(e)  Platinum shall have the right of endorsement on all payments received in connection with each Account Receivable and Seller hereby appoints Platinum its attorney-in-fact, coupled with an interest, for such purpose.

(f)  None of the Accounts Receivable result from a sale to a parent, subsidiary or constitute a consignment, sale or return or bill and hold transaction.

(g)  The Accounts Receivable are free of all liens, claims, charges and encumbrances.

(h) Seller hereby ratifies and confirms each of the statements, representations and warranties made in the most current copy of its Corporate Certificate delivered to Platinum and in any other document or agreement in connection herewith.

(i) All the above representations are subject to the following:

(1) Seller has informed Platinum and Platinum acknowledges that certain receivables are on bonded jobs, and under Illinois law and the Seller's agreement with the bonding company all receivables on the bonded job will become the bonding company's if the Seller defaults on the job.

(2) Seller has further informed Platinum and Platinum acknowledges that Seller is in the construction business and under Illinois law (and in most other states) subcontractors and material suppliers have lien rights and that subcontractors and material suppliers shall not be paid on their monthly invoices until Seller receives payment of the 70 percent of accounts receivable sold, provided, however, that Seller represents, agrees and covenant that (X) the Advance Amount is promptly being applied towards the payment of Seller's obligations to its sub- contractors and material suppliers; and (Y) Seller shall contemporaneously with such payment render to Platinum satisfactory evidence, in the form of wire transfers or otherwise, of same.

**3. No Recourse to Seller.** Except as hereinafter provided, Seller shall not be liable to repay all or any portion of the Advance Amount if any portion of the Accounts Receivable are not paid by the Account Debtor(s). Notwithstanding the foregoing, in the event (a) any of the representations set forth in Section 2 shall be untrue in any respect or there shall otherwise occur a breach of Seller's obligations hereunder or (b) there shall be a reduction in the amount paid on an Account Receivable by means of allowance(s), discount(s), return(s), performance defense(s) or offset(s), Platinum may (i) take a corresponding reduction from any other payments received on account of Seller or any subsidiary, affiliate or division thereof and/or reduce by a corresponding amount any payment to be made by Platinum hereunder or under any other Purchase and Sale Agreement between Platinum and Seller and (ii) demand reimbursement directly from Seller for the amount of any such deficiency and Seller shall immediately deliver such amount to Platinum.

**4. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely therein. The terms and provisions of Paragraph 11, 12 and 13 of the Factoring Agreement are expressly incorporated herein.

**5. Charges.** (a) Platinum shall have the full power and authority to collect each Account Receivable, through legal action or otherwise and may, if necessary, in its sole discretion to facilitate collection, settle, compromise, or assign (in whole or in part) the claim for any of the Accounts Receivable, or otherwise exercise any other right now existing or hereafter arising with respect thereto, provided, however, that prior to any settlement or compromise, Platinum may give Seller notice of the proposed settlement or compromise and may grant Seller with an option, which Seller shall have one business day to exercise, to repurchase the Account Recivable, provided further, that until such time, Seller shall not contact any of the Account Debtor until it receives Platinum's written authorization to do so. Any such compromise or settlement which reduces the amount collected on account of such Accounts Receivable shall reduce any amount otherwise due to Seller. In addition, Platinum may apply up to twenty five (25%) percent of the amount of the Accounts Receivable in excess of the Advance Amount to Platinum's reasonable costs and expenses (including attorneys fees and disbursements) of enforcing its rights against one or more of the Accounts Debtors. Seller and, if applicable, each Guarantor herein below set forth, shall and hereby are made liable, jointly and severally, in addition to any other obligations under this Agreement, for all costs and expenses (including attorney's fees and disbursements), together with interest on the amount of the Accounts Receivable from the date hereof to or including the date of collection at the maximum rate permitted by applicable law, in the event Platinum is required to enforce its rights hereunder against Seller or any such Guarantor by virtue of Seller's breach of the provisions of Section 2 hereof.

(b) Any payment to which Seller shall be entitled hereunder shall be reduced by the reimbursable out of pocket costs incurred by Platinum for Seller pursuant to the Fee and Reimbursements Schedule.

**6. Complete Agreement.** This Agreement sets forth the complete and entire understanding between Seller and Platinum and may only be modified by a written instrument signed by the party to be bound thereby. All understandings and agreements heretofore had between the parties, if any, with respect to the subject matter hereof are merged into this

2

Purchase and Sale Agreement which alone fully and completely expresses their agreement, but shall, in all events, be governed by the terms and conditions of the Factoring Agreement between the parties.

**7. Parties to be Bound.** This Agreement shall bind Platinum and Seller, their respective successors and assigns, and all subsidiaries and affiliates of Seller, to which each of the provisions hereof shall apply; provided, however, that Seller may not assign its interest hereunder without Platinum's consent.

**8. Notices.** All notices and other communications hereunder shall be deemed to have been sufficiently given when (a) mailed, postage prepaid, by certified or registered mail, sent by courier or telefaxed, return receipt requested, or confirmation of receipt requested in the case of telefax, and (b) sender shall have received such return receipt or confirmation, addressed to the party intended to receive the same at the address hereinabove set forth. The parties shall have the right to rely on as an original any notice given hereunder by telefax as aforesaid.

Seller has entered into this Purchase and Sale Agreement as of the _____ day of _____, 2006.

PLATINUM FUNDING SERVICES LLC          EEI HOLDING CORPORATION d/b/a EGIZII ELECTRIC, INC.


By: _William T. Rooney_____          By: _____
Name: William T. Rooney                  Name: Robert Egizii
Title: President                         Title: President and Chief Executive Officer

## FEE AND REIMBURSEMENTS SCHEDULE

The purchase price ("Purchase Price") for the Accounts Receivable purchased by Platinum shall be calculated from the invoice date and shall be based upon the date on which Platinum actually collects the amount due under the Accounts Receivable, as follows:

For invoices paid within 30 days, the Purchase Price shall be 98.0% of the amount of Accounts Receivable purchased and the discount therefrom (the "Discount") shall be 2.0%.

For invoices paid after 30 days but within 40 days, the Purchase Price shall be 97.33% of the amount of Accounts Receivable purchased and the Discount shall be 2.67%.

For invoices paid after 40 days but within 50 days, the Purchase Price shall be 96.66% of the amount of Accounts Receivable purchased and the Discount shall be 3.34%.

For invoices paid after 50 days but within 60 days, the Purchase Price shall be 95.99% of the amount of Accounts Receivable purchased and the Discount shall be 4.01%.

For invoices paid after 60 days but within 70 days, the Purchase Price shall be 95.32% of the amount of Accounts Receivable purchased and the Discount shall be 4.68%.

For invoices paid after 70 days but within 80 days, the Purchase Price shall be 94.65% of the amount of Accounts Receivable purchased and the Discount shall be 5.35%.

For invoices paid after 80 days but within 90 days, the Purchase Price shall be 93.98% of the amount of Accounts Receivable purchased and the Discount shall be 6.02%.

For invoices paid after 90 days, the Purchase Price shall be 85.00% of the amount of Accounts Receivable purchased and the Discount shall be 15.00%.

The Discount shall in no event exceed 15%.

Five (5) days will be added for collection.

Platinum has or will incur certain customary and regular charges on behalf of Seller for which Platinum shall be entitled to reimbursement as a deduction from amounts to which Seller may otherwise be entitled under the Purchase and Sale Agreement, as follows:

| | ITEM | AMOUNT |
|---|---|---|
| 1. | Postage; first class mail of Seller's invoices to Account Debtors | U.S. Postal Service prevailing rates |
| 2. | Preparation of credit report | $65.00 per report |
| 3. | Domestic wire transfer of immediately available funds | $25.00 per transfer |
| 4. | Overnight mail | $35.00 per package |
| 5. | Check certification/Cashier's checks | $25.00 per check |
| 6. | Initial UCC search and filing fee | $350.00 or actual if greater |
| 7. | Continuation search fees | $250.00 |
| 8. | Audit Charge | $700.00 per diem |
| 9. | Monthly Reports Access | $ 50.00 per month |

4

SCHEDULE A
TO
PURCHASE AND SALE AGREEMENT

DATED _____, 2006

BETWEEN PLATINUM FUNDING SERVICES LLC
AND
EEI HOLDING CORPORATION d/b/a EGIZII ELECTRIC, INC.

Request For Sale of Invoices

| Customer Name | Invoice Date | Invoice No. | Invoice Amount $ |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| 12. | | | |
| 13. | | | |
| 14. | | | |
| 15. | | TOTAL | |

[Add additional sheets if required]

The undersigned hereby requests Platinum Funding Services LLC to purchase the above described invoices, each and all of which are validly now due and owing, pursuant to the Purchase and Sale Agreement.

EEI HOLDING CORPORATION
d/b/a EGIZII ELECTRIC, INC.

By:_____
Name: Robert Egizii
Title:  President and Chief Executive Officer

## Acknowledgment

STATE OF ‾I‾l‾lᵢₙₒᵢₛ : ‾

COUNTY OF Sαₙgαₘₒₙ : SS:

On this 25ᵗʰ day of August, 2006, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation d/b/a Egizii Electric, Inc., an Illinois corporation, the corporation described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporation for the uses and purposes in said corporation set forth.

_____
Notary Public

```
┌─────────────────────────────────┐
│          OFFICIAL SEAL          │
│       VIRGINIA L. BAYLESS       │
│  NOTARY PUBLIC, STATE OF ILLINOIS │
│  MY COMMISSION EXPIRES 8-18-2008  │
└─────────────────────────────────┘
```

Exhibit C

PLATINUM FUNDING GROUP
130 West 42nd Street | 26th Floor   | New York, NY 10036
Tel 212 944 2828 | Fax 646 315 7229 | www.platinumfundinggroup.com

Platinum Funding Services LLC
A Member of Platinum Funding Group LLC

**PLATINUM**
*funding group*

July 20, 2007

Mr. Robert Egizii
President
EEI Holding Corporation, d/b/a Egizii Electric, Inc., d/b/a BRH Builders & Constructors,
d/b/a Sullivan Electric, Inc., Olson Electric Co., Inc., Robert Egizii and the Egizii Family
Limited Partnership.
700 North MacArthur Blvd.
Springfield, Illinois 62702

> RE: Factoring Agreement dated August 23, 2006 by and between EEI Holding
> Corporation, d/b/a Egizii Electric, Inc., d/b/a BRH Builders & Constructors, d/b/a
> Sullivan Electric, Inc., Olson Electric Co., Inc., Robert Egizii and the Egizii
> Family Limited Partnership. (collectively, "EEI") and Platinum Funding Services
> LLC ("Platinum"), (the "Factoring Agreement").

Dear Mr. Egizii:

This letter will confirm that the Factoring Agreement will be amended effective
July 1, 2007 so that lines 3 and 4 of paragraph 8 now reads *"fourth year anniversary of
the date hereof (the "Scheduled Term"), provided, that, Sellers may terminate this
Agreement at the third year anniversary of the date hereof upon tendering to Platinum"*.

In addition, this letter will also confirm that the Factoring Agreement will be
amended so that paragraph 9(a) now reads *"If the aggregate amount of approved
Accounts Receivable delivered by Seller to Platinum during any Term Month is less than
the Monthly Base Sales Amount, Seller shall pay to Platinum a Minimum Fee on account
of such Term Month. Such Minimum Fee shall be equal to the 30 day rate as set fourth in
the Fee and Reimbursements schedule attached to the Account Agreements"*.

Furthermore, this letter will confirm that the Factoring Agreement will be
amended so that paragraph 9(b) now reads *"If, in any Term Month, Seller shall deliver no
Accounts Receivable to Platinum, then Seller shall pay to Platinum in respect of such
Term Month a Minimum Fee equal to the 30 day rate as set fourth in the Fee and
Reimbursements schedule attached to the Account Agreements"*.

All other terms and conditions of the Factoring Agreement and related agreements
including the Performance Guarantee executed by Robert Egizii shall remain unchanged
and in full force and effect.

PLATINUM
*funding group*

Provided that the foregoing meets with your approval, please execute this letter agreement in the place provided and return an original to my attention.

Very truly yours,
PLATINUM FUNDING SERVIES LLC

By: _____
William T. Rooney, President

Accepted and Agreed to this _21_
day of July, 2007

EEI HOLDING CORPORATION
By: _____
Robert Egizii, President and CEO

Accepted and Agreed to this _21_
day of July, 2007

OLSON ELECTRIC CO., INC.
By: _____
Robert Egizii, President and CEO

Accepted and Agreed to this _21_
day of July, 2007

EGIZII FAMILY LIMITED PARTNERSHIP
By: _____
Robert Egizii, General Partner

Accepted and Agreed to this _21_
day of July, 2007

_____
Robert Egizii, Solely for the purposes of Section 3(f)

Accepted and Agreed to this _21_
day of July, 2007

_____
Robert Egizii, Individually

## Acknowledgment

STATE OF Illinois            :
                             : SS:
COUNTY OF    Sangamon :

On this 21 day of July, 2007, before me personally came Robert Egizii, to me known, who being duly sworn, did depose and say that he resides at 1645 West Laurel, Springfield, Illinois 62704 and that he is the President and Chief Executive Officer of EEI Holding Corporation, an Illinois corporation d/b/a BRH Buliders & Constructors, Egizii Electric, Inc., Sullivan Electric, Inc., and that he is the President and Chief Executive Officer of Olson Electric Co., Inc., a Florida corporation, the corporations described in and which executed the foregoing instrument, and acknowledged that he executed the same by authority of the board of directors of said corporations for the uses and purposes in said corporations set forth.

Notary Public

```
OFFICIAL SEAL
CARRIE TAFT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-16-2008
```

STATE OF __Illinois__ )
                        ) SS.
COUNTY OF __Sangamon__ )

       I certify that on July 21__, 2007, Robert Egizii personally came before me and acknowledged under oath, to my satisfaction, that this person (or if more than one, each person):

    (a)     is named in and personally signed this document; and

    (b)     signed, sealed and delivered this document as his or her act and deed.

Signed and sworn to before me this _21_ day of July, 2007.

_____
Notary Public

OFFICIAL SEAL
**CARRIE TAFT**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-16-2008

130 West 42nd Street | 26th Floor | New York, NY 10036
Tel 212 944 2820 | Fax 646 311 7226 | www.platinumfundinggroup.com

**PLATINUM**
*funding group*

Platinum Funding Services LLC
A Member of Platinum Funding Group LLC

July 20, 2007

Mr. Robert Egizii
President
EEI Holding Corporation, d/b/a Egizii Electric, Inc., d/b/a BRH Builders & Constructors,
d/b/a Sullivan Electric, Inc., Olson Electric Co., Inc., Robert Egizii and the Egizii Family
Limited Partnership.
700 North MacArthur Blvd.
Springfield, Illinois 62702

Dear Mr. Egizii:

This letter will confirm that the batching will be controlled by EEI Holding
Corporation, d/b/a Egizii Electric, Inc., d/b/a BRH Builders & Constructors, d/b/a
Sullivan Electric, Inc., Olson Electric Co., Inc., Robert Egizii and the Egizii Family
Limited Partnership. (collectively, "EEI") and if there is an invoice that Platinum is not
comfortable buying, Platinum would need an email from EEI allowing Platinum to
rebatch the before mentioned invoice with another batch previously submitted to
Platinum.

Very truly yours,
PLATINUM FUNDING SERVIES LLC

By: _____
William T. Rooney, President

Exhibit D

**PLATINUM**
*funding group*

PLATINUM FUNDING GROUP
130 West 42nd Street I 26th Floor I New York, NY 10036
Tel 212 944 2828 I Fax 646 315 7229 I www.platinumfundinggroup.com

Platinum Funding Services LLC
A Member of Platinum Funding Group LLC

January 28, 2008

<u>Via Facsimile and Overnight Courier</u>

EEI HOLDING CORPORATION
d/b/a EGIZI ELECTRIC, INC.
700 North MacArthur Blvd
Springfield, Illinois 62702

EEI HOLDING CORPORATION
d/b/a BRH BUILDERS & CONSTRUCTORS
702 North MacArthur Blvd
Springfield, Illinois 62702

EEI HOLDING CORPORATION
d/b/a SULLIVAN ELECTRIC, INC.
2102 East Main,
Marion, Illinois 62959

OLSON ELECTRIC CO., INC.
4200 Church Street, Suite 1042
Sanford, Florida 32771

      RE: Factoring Agreement by and among  EEI HOLDING CORPORATION d/b/a EGIZI ELECTRIC, INC., d/b/a BRH BUILDERS & CONSTRUCTORS, d/b/a SULLIVAN ELECTRIC, INC. and OLSON   ELECTRIC CO., INC. (collectively, EEI"), on one hand and PLATINUM FUNDING SERVICES LLC ("Platinum") dated as August 23, 2006 (the "Factoring Agreement"), on the other hand.

Dear Mr. Egizii:

      This letter will serve as written notice as provided for in the Factoring Agreement that Platinum hereby elects, pursuant to paragraph 10 of the Factoring Agreement, to terminate the Factoring Agreement based upon the failure by EEI, for a period of forty five (45) days, to deliver any Accounts Receivable to Platinum for purchase.

      Please note that EEI and the guarantors are liable for the No Delivery Fee as set forth in the Factoring Agreement.

      Very truly yours,
      PLATINUM FUNDING SERVICES LLC

      By: _____
      James R. Bartle, COO

c: Robert Egizii, Guarantor

NEW YORK I NEW JERSEY I FLORIDA I ILLINOIS I TEXAS I CALIFORNIA

*A Factor in Your Success*

# TASHJIAN & PADIAN

### ATTORNEYS AT LAW

15 WEST 36TH STREET
NEW YORK, NEW YORK 10018

TELEPHONE: (212) 319-9800
FACSIMILE: (212) 319-9883
NOT FOR SERVICE OF LITIGATION PAPERS

NEWARK, NEW JERSEY
WEB: http://www.tashpad.com
E-MAIL: info@tashpad.com

January 31, 2008

**BY HAND**
Mr. James R. Bertie, COO
Platinum Funding Group
130 West 42nd Street
26th Floor
New York, NY 10036

> Re:     Factoring Agreement by and Between EEI Holding Corporation
> and Platinum Funding Services, LLC dated August 23, 2006
> <u>and amended as of July 1, 2007 (the "Agreement")</u>

Dear Mr. Bertie:

We represent EEI Holding Corporation ("EEI") in regard to the above-referenced matter and write in response to your letter dated January 28, 2008, in which Platinum Funding Services LLC ("Platinum") appears to be attempting to exercise a purported right to terminate the Agreement pursuant to Paragraph 10.

Platinum's purported justification for its unilateral termination of the Agreement is an alleged failure by EEI "to deliver any Accounts Receivable to Platinum for purchase" for a 45 day period. As you know, Platinum is still receiving delivery of EEI's receivable payments and is taking its fee from such payments. Moreover, Platinum has paid and, pursuant to the Agreement, is continuing to pay the balance over to EEI. This has been the undisputed course of dealing under this Agreement for months.

As you also know, the Agreement was amended effective as of July 1, 2007 to provide that EEI would make monthly minimum payments, rather than selling receivables to Platinum, to account for the change in EEI's business, which greatly reduced the accounts receivable available for sale to Platinum. Accordingly, the Agreement was amended to (1) address the issue of what EEI would pay in light of the fact it would have greatly reduced amounts of receivables or perhaps no receivables to sell and (2) address the issue of modifying EEI's right to terminate the Agreement after the third year anniversary.

Pursuant to the Amendment, Paragraph 8 of the Agreement provides that EEI "may terminate this Agreement at the third year anniversary of the date hereof upon tendering to Platinum a cash payment of $1,000,000 in immediately available funds, which termination payment shall be reduced by 1/12th for each month after the first year anniversary." The first year anniversary date was August 23, 2007. Accordingly, the cash payment required of EEI to

TASHJIAN & PADIAN
ATTORNEYS AT LAW

Mr. James R. Bertie
January 31, 2008
Page 2 of 2

terminate the Agreement under Paragraph 8 will be zero as of August 23, 2008. In the context of the most recent negotiations for EEI to buy out and terminate the Agreement, Platinum has taken the position that the one million dollar cash payment would still be owed if EEI terminated in August of 2009. This unreasonable position is not supported by the terms of the Agreement.

Platinum is now wrongfully trying to terminate the Agreement for an alleged failure to provide receivables for a 45 day period, despite the amendments and the agreed payment of sixty thousand dollars per month. Platinum's most recent actions are akin to terminating the Agreement without cause.

Even if Platinum had legitimate grounds to terminate the Agreement, which it does not, and assuming that EEI did not exercise its right to terminate the agreement pursuant to paragraph 8, EEI would, at most, be responsible only for the payment of sixty thousand dollars per month until August 31, 2009, less the credit EEI is owed from Platinum due to Platinum previously miscalculating the Minimum Fee owed under paragraph 9(a).

While EEI remains willing to discuss an amicable resolution, Platinum's current position is wholly inconsistent with a good faith approach and should it persist, will cause EEI to file for the appropriate relief in court.

Very truly yours,

Gerald Padian

cc:    Mr. Robert Egizii
       Ariel Weissberg, Esq.
       Stephen Tagge, Esq.
       Todd Turner, Esq.
       Mr. Eyal Levy
       Mr. William Rooney

2

**PLATINUM**
*funding group*

PLATINUM FUNDING GROUP

130 West 42nd Street I 26th Floor   I New York, NY 10036
Tel 212 944 2828 I Fax 646 315 7229 I www.platinumfundinggroup.com

Platinum Funding Services LLC
A Member of Platinum Funding Group LLC

February 7, 2008

<u>BY HAND</u>

Gerald Padian, Esq.
Tashjian & Padian
15 West 36th street
New York, New York 10018

> Re:  <u>Factoring Agreement by and between Platinum Funding Services LLC.
> ("Platinum") and EEI Holding Corporation ("EEI"), dated August 23, 2006,
> as amended (the "Factoring Agreement").</u>

       We are writing to you to address the issues raised in your letter to Platinum dated January 31, 2008.

We disagree with all the arguments set forth in your letter.

By letter dated January 28, 2008, (the "Termination Notice") Platinum exercised its right to terminate the Factoring Agreement based on paragraph 10 thereof, which states, in relevant part, as follows:

*Notwithstanding anything to the contrary herein contained, this Factoring Agreement may be terminated by Platinum, in Platinum's sole discretion on three (3) days' written notice to Seller if, for a period of forty five (45) days, Seller shall deliver no Accounts Receivable to Platinum for purchase as herein provided (a "No Delivery Termination")........*

It is undisputed that no accounts receivables were delivered by EEI to Platinum for purchase for a period exceeding 45 days, prior to the Termination Notice. As your client is well aware, a purchase of accounts receivable is always evidenced by a specific Purchase and Sale Agreement executed by EEI and also results in an advance payment made by Platinum to EEI based on the face amount of the factored receivables. Since no accounts receivables were sold to Platinum for a period exceeding 45 days prior to the Termination Notice, no such Purchase and Sale Agreements were executed during this time and no advance payments

**PLATINUM**
*funding group*

were made by Platinum to EEI. EEI simply elected to pay Platinum the Minimum Fee[1] due, instead of providing accounts receivable to Platinum for purchase.

However, the payment of the Minimum Fee due does not constitute delivery of accounts receivable.

The fact that such Minimum Fee due was paid out of non factored receivables (which were collected by Platinum based on the irrevocable assignment notices sent to EEI's customers) does not change the legal situation.

Once EEI elected not to deliver any accounts receivable to Platinum for purchase for a period exceeding 45 days, Platinum had a contractual right to terminate the Factoring Agreement, which it exercised.

Your letter states that the amendment to the Factoring Agreement dated July 20, 2007 (the "Amendment") provides "that EEI would make monthly minimum payments, rather than selling receivables to Platinum...". This is simply untrue.

The change made by the Amendment only related to the calculation method of the Minimum Fee due Platinum in the event EEI does not deliver the agreed upon minimum amount of accounts receivable. It does not amend Platinum's right to terminate the agreement pursuant to paragraph 10 and it does not change EEI's obligation to sell receivables to Platinum.

EEI's right to terminate the agreement prior to the expiration of the full term of the agreement was in fact changed in the Amendment. However (and without addressing your argument that such termination right could have been exercised without any payment), **this early termination right was never exercised by EEI and therefore , it bears no relevance to the issue at stake.** The Term of the Factoring Agreement, as provided in paragraph 8, and as amended by the Amendment, is 4 years. Therefore, the Minimum Fee that EEI is obligated to pay Platinum, following Platinum's No Delivery Termination and pursuant to paragraph 10 of the Factoring Agreement, is to be calculated based on the full term of the Factoring Agreement, namely, four years.

Your client is a sophisticated businessman who negotiated the Factoring Agreement at length. The Factoring Agreement was further carefully reviewed and negotiated by EEI's attorneys. The language of the Factoring Agreement and the Amendment, which was agreed upon by the parties, clearly supports all actions taken by Platinum and Platinum's right to collect the outstanding Minimum Fee following the No Delivery Termination.

---

[1] Capitalized terms shall have the definitions set forth for such terms in the Factoring Agreement.



**PLATINUM**
*funding group*

Lastly, we strongly object to sending the letter addressed to Platinum and its officers, to the personal addresses of Eyal Levy and Jim Bertie. Messrs. Levy and Bertie are acting solely as representatives of Platinum in this regard. We demand that you immediately cease this practice and avoid sending any additional correspondence to their personal addresses.

Nothing herein is intended to be, nor should it be construed as, a waiver or relinquishment of any rights or remedies, which Platinum may have, and all such rights and remedies are specifically reserved.

Very truly yours,

Shlomit Ophir-Harel, Esq.
Chief Legal Counsel

cc:    Eyal Levy
       James Bertie
       William Rooney
       Stephen Tagge, Esq.

# TASHJIAN & PADIAN

### ATTORNEYS AT LAW

15 WEST 36TH STREET
NEW YORK, NEW YORK 10018

TELEPHONE: (212) 319-9800
FACSIMILE: (212) 319-9883
NOT FOR SERVICE OF LITIGATION PAPERS

NEWARK, NEW JERSEY
WEB: http://www.tashpad.com
E-MAIL: info@tashpad.com

February 8, 2008

**BY FACSIMILE & FEDERAL EXPRESS**

Shlomit Ophir-Harel, Esq.
Chief Legal Counsel
Platinum Funding Group
130 West 42nd Street
26th Floor
New York, NY 10036

Re:    Factoring Agreement by and Between EEI Holding Corporation
       ("EEI") and Platinum Funding Services, LLC ("Platinum")
       dated August 23, 2006 and amended as of July 1, 2007 (the "Agreement")

Dear Mr. Ophir-Harel:

We are in receipt of your letter of February 7, 2008. EEI disagrees with all of the positions taken by Platinum in the letter. As you are no doubt aware, Platinum's interpretation of the Agreement is contrary to both the July 1, 2007 amendment and the course of dealing between the parties. EEI maintains its position as set forth in our prior letter of January 31, 2008 that, *inter alia*, Platinum's purported termination of the Agreement is without basis.

It has also since come to our attention that Platinum has charged the EEI Reserve Account in the amount of $1,920,000, purportedly as a "No Delivery Fee." This charge and the debit of the reserve balance (which as of today was approximately $149,000) are improper. Assuming Platinum was not in breach of the Agreement, the most it would be entitled to is the $60,000 minimum monthly payment. Accordingly, the Reserve Account has been improperly debited by approximately $89,000, the return of which is hereby demanded.

Pursuant to the telephone conversation yesterday between Messrs. Egizii and Rooney, Platinum is to make a counter-offer to EEI to settle this dispute. Given the fact that Platinum continues to debit EEI's accounts receivables against the disputed "No Delivery Fee" as they arrive, we ask that any counter-offer be made no later than the close of business on Tuesday, February 11, 2008.

TASHJIAN & PADIAN
ATTORNEYS AT LAW

Shlomit Ophir-Harel, Esq.
February 8, 2008
Page 2 of 2

Very truly yours,

Gerald Padian

cc:    Mr. Robert Egizii
       Ariel Weissberg, Esq.
       Stephen Tagge, Esq.
       Todd Turner, Esq.

2

15 West 36th Street
New York, NY 10018
(212) 319-9800 Phone
(212) 319-9883 Fax

**TASHJIAN & PADIAN**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Shlomit Ophir-Harel, Esq. | **From:** | Gerald Padian, Esq. |
| **Fax:** | (646) 315-7229 | **Pages:** | 2 following |
| **Phone:** | (212) 944-2828 | **Date:** | 2/8/2008 |
| **Re:** | EEI Holding Corporation | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

**Please see attached.**

The information contained in this facsimile is confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.